IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INVENSENSE, INC.<br><br>                    Plaintiff,<br><br>          v.<br><br>STMICROELECTRONICS, INC.<br><br>                    Defendant | Civil Action No. 2:13-cv-405 |

## DEFENDANT STMICROELECTRONICS, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER

This is a patent infringement case filed by plaintiff InvenSense, Inc. ("INV") against defendant STMicroelectronics, Inc. ("STM").  STM hereby moves to dismiss INV's Amended Complaint for Patent Infringement for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[1]  Alternatively, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses, STM respectfully requests that the Court transfer this action to the United States District Court for the Northern District of California.  STM's motion is supported by the facts and argument set forth below as well as the accompanying declarations and evidence cited therein.

---

[1]  STM files its Motion pursuant to Federal Rule of Civil Procedure 12(b)(3) in lieu of an Answer.  D.N. 18.  STM reserves its right to file an Answer or any other pleading provided for by the Federal Rules of Civil Procedure and applicable local rules in the event that its Motion is denied.

## I.     **INTRODUCTION**

STM is not subject to venue in this District for this matter.  STM does not reside in this District, has not committed any alleged acts of infringement in this District, and has no established place of business in this District.  Accordingly, under 28 U.S.C. § 1400(b), INV has no legal basis for suing STM for patent infringement here, mandating immediate dismissal of this action.

Even if INV could sustain its burden to show venue is proper here (which it cannot), all of the transfer factors under 28 U.S.C. § 1404(a) weigh strongly in favor of transfer.  Neither Northern California-based INV nor Northern Texas-based STM has any real connection to the Eastern District of Texas, as neither has offices, property, sources of documentary evidence, or other interests in this District.  STM's business records confirm the lack of any accused infringing sales in this District and STM is unaware of any sources of documentary evidence or even a single non-party witness who resides in this District.  Indeed, STM would be substantially prejudiced by having to litigate in this venue, where the Court does not have absolute subpoena power to require participation of INV's own relevant witnesses including the inventors of the asserted patents (or any relevant witnesses whatsoever) at trial.

The dearth of any meaningful connection with this District raises the question:  Why did INV file this action in East Texas?  The answer lies in the Northern District of California, where the parties are presently suing each other for patent infringement in two currently stayed litigations, *STMicroelectronics, Inc. v. InvenSense, Inc.*, Case No. 13-1116 JCS (N.D. Cal.) and *STMicroelectronics, Inc. v. InvenSense, Inc.*, Case No. 012-2475 JSW (N.D. Cal.) (collectively the "California Litigation").  Those cases were stayed *at INV's specific request*.  It is nearly certain that the California Court would have consolidated, and stayed, INV's present action against STM had INV filed this action in the Northern District of California, especially since STM's products at issue in the California Litigation are the same as those INV accuses here.  The

presence of pre-existing, parallel litigation between the parties, against the exact same products, weighs determinatively in favor of transfer.  Having elected to stay its own patent claims to convince the Northern District of California Court to stay STM's offensive patent infringement claims against INV, INV should not now be allowed to circumvent the current stay order by suing STM over these same products in a jurisdiction far removed from the "center of gravity" of this dispute and having no connection with STM, INV, the accused products, the relevant witnesses, or sources of proof.

This case belongs in California.  Any purported nexus between INV's infringement claims and East Texas is too attenuated to satisfy the requirements of § 1400, thereby justifying immediate dismissal.  Alternatively, because the Northern District of California has substantial connections to both parties' facilities, relevant witnesses, and expected sources of proof, transfer to that venue is warranted under § 1404(a).  This is hardly surprising given that INV is headquartered in the Northern District of California, just forty miles from the courthouse in which the parties' prior actions are pending (making each of its employees subject to compulsory process), and STM has a substantial regional office there that is a hub of relevant domestic activities at issue in this case.  Moreover, several non-party witnesses reside in or around the Northern District of California, rendering these witnesses subject to compulsory process in that district and making it overwhelmingly the most convenient forum for discovery and trial.  Thus, should this Court decline to dismiss INV's Amended Complaint, STM respectfully requests that the Court transfer this case to the Northern District of California for the convenience of the parties and witnesses.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

This Motion presents two issues for this Court to decide:  (1) whether this action should be dismissed because plaintiff filed in an improper venue or, in the alternative, (2) whether

transfer to the United States District Court for the Northern District of California is appropriate pursuant to 28 U.S.C. § 1404.

## III.   STATEMENT OF FACTS

### A.   The Parties Are Already Engaged In Multiple Litigations In The Northern District Of California.

In May 2012, after licensing negotiations between the parties broke down, STM filed suit against INV in the Northern District of California for infringement of nine STM patents.  Powell Decl. Ex. 1.  *STMicroelectronics, Inc. v. InvenSense, Inc.*, Case No. 012-2475 JSW (N.D. Cal.). INV countered with its own patent infringement counterclaims, asserting two INV patents directed to the design and manufacture of microelectromechanical systems ("MEMS Devices"). *Id.* at Ex. 2.  In those counterclaims, INV accused specific components and versions of STM's L3G4200D and LSM330 devices of infringement.   *Id.* at Ex. 2 at ¶¶ 100-103, 108-110.[2] Tellingly, INV conceded that venue was proper in the Northern District of California.  *Id.*

On September 11, 2012, INV asked the U.S. Patent Office to reexamine seven of STM's nine asserted patents.  *See id.* at Ex. 5.  Based on its requests, on September 26, 2012, INV filed its first motion asking the Northern District of California Court to *partially* stay the action pending reexamination.  Specifically, INV sought to stay STM's infringement claims on the seven patents subject to INV's reexamination requests, but to allow INV's own infringement claims against STM to proceed unhindered.  *Id.*  At STM's urging that INV should not be permitted to use the reexamination process to gain a tactical advantage in the litigation, the Court rejected without oral hearing INV's lopsided request.  *Id.* at Ex. 6.

Undeterred, INV filed additional reexamination requests against STM's patents and, without waiting to see if the Patent Office was going to grant these requests, INV moved again in

---

[2]   STM's L3G4200D is an integrated gyroscope that incorporates four movable masses that allow it to sense rotational motion directions.  Powell Decl. Ex. 3.  STM's LSM330 products also include a four-mass gyroscope packaged with an accelerometer for sensing linear motion. *Id.* at Ex. 4.

January 2013, this time asking the Court to stay the *entire* litigation, including its own patent infringement counterclaims against STM.  *Id*. at Ex. 7.  As INV explained to the Court:

> Finally, **to alleviate any claimed prejudice from a one-sided stay of only ST's patents**, **InvenSense, by this Motion, requests a stay of the <u>entire case</u> pending reexamination, including its counterclaims of infringement of its own two patents**.  InvenSense does so, even though its own  patents are infringed by ST (a direct competitor) and there are no reexamination proceedings challenging the validity of InvenSense's patents.  **Thus, to the extent there is any harm from a stay due to continued infringement by a competitor, such harm will be borne by both parties.**  *Microsoft Corp. v. TiVo Inc*., No. 10-CV-00240-LHK, 2011 U.S. Dist. LEXIS 52619, at *14-*15  (N.D. Cal. May 6, 2011) (granting stay because plaintiff's concerns regarding undue prejudice were negated, in part, by defendant's willingness to stay its own patent infringement counterclaims pending reexamination of plaintiff's patents); *see also Protect Connect, Inc. v.  Leviton Mfg. Co*., No. 10cv758 AJB (BGS), 2011 U.S. Dist. LEXIS 44045, at *2-*3 (S.D. Cal. Apr. 22, 2011) (staying entire case, including counterclaim patents not in reexamination).

*Id.* at Ex. 7 at 8 (emphasis added).  This time around the Court granted INV's motion, finding "that staying this entire action, **including the counterclaims**, would not unduly prejudice or present a clear tactical advantage to either party."   *Id*. at Ex. 8 (citation omitted) (emphasis added).   The stay entered by the Court is temporary and expires once the reexamination proceedings INV initiated have been completed.  The Court also ordered the parties to submit status reports on the  reexamination proceedings every four months.  *Id*.

On March 11, 2013, STM filed a Complaint with the International Trade Commission seeking institution of an investigation into INV's and its customers' infringement of five (5) STM patents, including three STM patents asserted in the original Northern District of California litigation and two additional patents, U.S. Patent Nos. 6,370,954 (the "'954 patent") and 6,034,419 (the "'419 patent").  Powell Decl. Ex. 9.  Thereafter, on March 12, 2013, STM filed a companion action in the Northern District of California asserting the '954 and '419 patents, which was likewise stayed at INV's request (without opposition from STM) pursuant to 28 U.S.C. § 1659, pending resolution of the ITC Investigation.  *STMicroelectronics, Inc. v. InvenSense, Inc.*, Case No. 13-1116 JCS (N.D. Cal.).   The ITC instituted the requested

investigation on April 10, 2013. *Certain Microelectromechanical Systems ("MEMS Devices") and Products Containing Same*, Inv. No. 337-TA-876 (U.S.I.T.C.); Powell Decl. Ex. 10.

On April 29, INV moved to stay the ITC Investigation based on its previously-initiated reexaminations of the three patents at issue in the original Northern District of California action as well as new petitions for *inter partes* review, that INV filed after the ITC case commenced, against the '954 and '419 patents. In its motion, INV chastised ST for its alleged "blatant end run around a district court order staying previously-filed litigation" (Ex. 11 at 1), which it characterized as intentional "circumvention of the district court's order" (*id.* at iii). INV argued that STM's ITC Complaint was manifest "forum shopping" to evade the stay of the parties' district court litigation (*id.* at 18), particularly because the "money damages" that ST could recover in the Northern District after the stay was lifted "would be adequate to compensate it for any delay" caused by the stay (*id.* at 12). The ALJ disagreed. Ex. 12. In denying INV's request to stay the ITC Investigation, the ALJ relied in part on the unique nature of ITC proceedings and the specific types of remedies afforded therein, which are not at available from the district court. *Id.* at 7-8. The ALJ rejected INV's allegations of forum shopping, finding that the Commission had been aware of the reexamination proceedings and stay but chose to "institute this Investigation anyway, allowing Complainant the opportunity to find relief in another forum" that is distinct from district court, and that allowing a respondent to achieve a stay of ITC proceedings based on reexamination proceedings it initiated would undermine the efficacy and fairness of ITC proceedings. Powell Decl. Ex. 12 at 6,8.

On May 16, 2013, less than three months after the California Court stayed all pending federal district court litigation between the parties ***at INV's request***, INV filed the present infringement suit in this District, accusing the same STM products of infringement as are currently at issue 1,600 miles away in the stayed California Litigation. D.N. 1, 11.

**B.      INV And This Action Have No Connection To The Eastern District Of Texas, But Do Have Close Ties To The Northern District Of California.**

INV, a Delaware corporation with its principal place of business in Sunnyvale, California (in the Northern District of California and just 40 miles from the San Francisco courthouse in which the California Litigation is now pending), has no known ties to this District.  D.N. 11 at ¶ 3.   INV touts its extensive ties to the Northern District of California community, where its "principal executive offices" as well as its "engineering design teams" are located.  Powell Decl. Ex. 13 at 4, 14.   Indeed, INV is expanding its footprint in the Northern District of California, including by leasing a 130,000 square-foot space in San Jose and planning to hire hundreds of new employees.  *Id*. at Ex. 14.

INV's website advertises that product development work takes place in its Sunnyvale office, where at least two named inventors of the asserted patents still appear to work.  *Id*. at Exs. 15-8  The other inventors appear to be located in Arizona, New York, and Croatia, respectively.  *Id*. at Ex. 19-21.   The prosecuting attorneys for the patents-in-suit are likewise located in the Northern District of California, in Palo Alto.  D.N. 11 at Exs. A-C.   In short, ***no*** company or individual associated with the invention, prosecution, or ownership of INV's asserted patents is located in this District.

**C.      STM Also Has No Meaningful Connection To This District, But Does Have A Substantial, Relevant Relationship To The Northern District Of California.**

STM is also not headquartered in the Eastern District of Texas nor has it undertaken any acts accused of infringement here.  STM is a Delaware corporation with its principle place of business in the Northern District of Texas, in Coppell, more than 100 miles away from Marshall.  Fillip Decl. ¶ 4.[3]  STM was not involved in the initial development and design of the accused products and they are exclusively manufactured outside the United States.  *Id*. at ¶ 5.

---

[3]      Unless the corporate form is a relevant consideration, the companies are referred collectively herein as STM.  Where corporate form may be relevant, it is identified specifically in context.

None of STM's Texas-based employees has any responsibility for the design or manufacture of the accused products.  *Id*. at ¶¶ 5, 7, Peruzzi Decl. ¶ 7.  As discussed further herein, the universe of relevant STM employees who have any connection to this case and reside in Texas is limited to two (2) individuals at ST's headquarters in Coppell, Texas, who were involved in the earlier licensing negotiations with INV, though notably, those negotiations did not involve and pre-dated the issuance of the patents asserted by INV in this Eastern District of Texas case.  Fillip Decl. ¶ 7.

By comparison, STM has a substantial, relevant presence in the Northern District of California.  *Id*. at ¶ 6.  It maintains a regional office in Santa Clara, California (located in the Northern District of California) that employs the teams responsible for technical marketing, design-in, and sales support to STM's principal U.S. customers for the accused products, such as Apple.  *See* Peruzzi Decl. ¶¶ 3-5 (identifying 10 relevant employees in Santa Clara); Fillip Decl. ¶ 6.  STM's Santa Clara office is also a source of relevant documentary evidence, *e.g.*, marketing materials, technical design specifications, and other documents relating to its joint development, modification, sales and offers to sell the accused products for use in U.S. customers' downstream products (such as the iPhone and iPad).  Peruzzi Decl. at ¶ 6.  And, because INV accuses the same STM products in the California Litigation as it does in the present action, the STM witnesses and documents located in the Northern District of California have the same relevance to both the California Litigation and the present case filed in the Eastern District of Texas (in which STM has not yet appeared).  *Compare* Powell Decl. at Ex. 2 *with* D.N. 11.[4]

---

[4]    Additional relevant facts are set forth in the Declarations of Mike Powell, Rino Perruzi, and Kevin Fillip accompanied herewith, and discussed further below.

## IV.   LEGAL STANDARDS

### A.   Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss an action brought in an improper venue.  Fed. R. Civ. P. 12(b)(3); *see also* 28 U.S.C. § 1406(a).  Once a defendant raises a 12(b)(3) motion, the burden of sustaining venue lies with the plaintiff.  *Watts v. L-3 Commc'n Corp.*, No. 2:12-cv-28-JRG, 2012 WL 4480721 (E.D. Tex. Sept. 26, 2012); *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002).  Upon concluding that venue is improper, the Court "'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'"  *Orica Explosives Tech., Ltd. v. Austin Powder Co.*, Civil Action No. 2:06-cv-450 (TJW), 2007 WL 1115238, at *1 (E.D. Tex. Apr. 13, 2007) (quoting 28 U.S.C. § 1406(a)).

In patent infringement cases, venue is proper in "the judicial district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  In the case of corporate defendants, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ."  *Orica Explosives*, 2007 WL 1115238, at *1 (quoting 28 U.S.C. § 1391(c)).[5]

---

[5]   The 1988 amendment to Section 1391(c) expanded the scope of a corporation's residence, for venue purposes, to all districts in which it is subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(c) (and commentary thereto); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990), *cert. denied* 111 S.Ct. 1315 (1991).  Thus, the second prong of the venue statute no longer directly applies to corporate defendants.  *Id.*, at 1580 n.17 ("It can be argued that by reading § 1391(c) into § 1400(b), the second test under § 1400(b) becomes superfluous . . . .  However, this argument overlooks that § 1400(b) applies to *all* defendants, not just corporate defendants, thus the second test for venue remains operative with respect to defendants that are not corporations."); *Sanofi-Aventis v. Sython Holding BV*, 2008 WL 819295, at *5 (M.D.N.C. Mar. 20, 2008) ("The Court notes that under the holding of the Court of Appeals for the Federal Circuit in [*VE Holding Corp.*] . . . analysis of this second prong of § 1400(b) is not required for corporate defendants because it is already covered under the first prong for any place a corporate defendant 'resides.'").

Personal jurisdiction in patent cases is determined under the law of the Federal Circuit. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335 (Fed. Cir. 2012) ("We apply Federal Circuit law because the jurisdictional issue is intimately involved with the substance of the patent laws.") (internal citation omitted).  The Federal Circuit has held that in states such as Texas where the forum's long arm statute is coextensive with the limits of due process, personal jurisdiction is determined by evaluating whether the defendant has sufficient minimum contacts with the forum "such that maintaining the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194 (Fed. Cir. 2003); *see also ATEN Int'l Co. Ltd. v. Emine Technology Co., Ltd.*, 261 F.R.D. 112, 118 (E.D. Tex. 2009).  Such minimum contacts may be of the "continuous and systematic" nature such as to support general jurisdiction or "plaintiff's claims must arise from or relate to the defendant's contacts with the forum to support specific jurisdiction."  *Orica Explosives*, 2007 WL 1115238, at *2; *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).  Under either jurisdictional theory – general or specific – "random," "fortuitous," or "attenuated" contacts, and contacts resulting from the "unilateral activity" of others, are insufficient to support jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

## B.    Motion To Transfer

Even where venue is legally proper, the Court may exercise its discretion to order a change of venue "[f]or the convenience of the parties and witnesses."  *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, Case No. 2:10-cv-224-JRG, 2012 U.S. Dist. LEXIS 7575, at *6 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.).  The goal of § 1404(a) "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

"The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *6 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). "If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district." *Id.* In making the convenience determination, the Court considers the following private interest factors: "(1) relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *7 (citing *Nintendo*, 589 F.3d at 1198; *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2009); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). The Court may also consider these public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized issues decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Id.*

Under Fifth Circuit law, the plaintiff's choice of venue is not a "distinct factor in the § 1404(a) analysis." *TS Tech*, 551 F.3d at 1320. "Rather, the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue." *Id.*; *see also In Re Volkswagen*, 545 F.3d at 314 n.10 (Plaintiff's choice of forum taken into account only insofar as it places the burden on the Defendant to show "good cause" for the transfer).

## V.     ARGUMENT

There is no discernible basis for INV's decision to file its Amended Complaint in the Eastern District of Texas other than as an end-run around the California Litigation that was

stayed based upon INV's agreement to stay its own claims so as not to gain "a clear tactical advantage."  Powell Decl. Ex. 8.  Whether because it finds the venue improper, or for the convenience of the parties and witnesses, STM requests that this Court immediately dismiss INV's improperly filed action, or transfer it to the United States District Court for the Northern District of California.

### A. The Amended Complaint Should Be Dismissed Because The Eastern District Of Texas Is Not A Proper Venue For This Litigation

INV provides no particularized allegations in its Amended Complaint to support venue in this jurisdiction, relying instead on generalized allegations of STM's acts of infringement and prior litigation in this District.  D.N. 11 at ¶ 7.  INV's venue allegations are either inaccurate or irrelevant to the appropriate analysis:  STM has not committed any acts subject to INV's infringement allegations in this District, and STM's prior limited litigation history in this District is insufficient to justify venue here.  Since STM neither resides in the Eastern District of Texas nor has committed any acts of infringement here (much less maintains an "established place of business" here), INV's choice of venue is improper.  28 U.S.C. § 1400.

### 1. STM Does Not Have An Established Place Of Business Or Other Continuous, Systematic Contacts With This District.

STM is a Delaware corporation with its headquarters in Coppell, Texas, in the Northern District of Texas.  Fillip Decl. ¶ 4.  STM does not own any property in the Eastern District of Texas; its employees do not "frequently travel or conduct business" in this District; and it maintains no offices, phone or fax listings, or bank accounts here.  *Id.  Compare Princeton Digital Image Corp. v. Facebook, Inc.*, Case No. 2:11-cv-400-JRG, 2012 U.S. Dist. LEXIS 119432, at *7 (E.D. Tex. Aug. 23, 2012) (Gilstrap, J.); *see also Watts*, 2012 WL 4480721, at *1-2 (the presence of a single relevant employee in the jurisdiction was insufficient to support venue); *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1305 (Fed. Cir. 1999) (same).  In sum, STM does not have an established place of business in this District.  *Id.*

Additionally, STM does not market or make any sales of the accused products to, or

generate any revenue from, any customers, including distributors, in this District.  Fillip Decl. ¶¶

4, 8-9.   Rather, the accused products are designed, developed, and manufactured abroad

(primarily in Europe) and although STM does provide sales, marketing and other technical

support in the U.S., it does not do so for any companies in East Texas.  *Id.* at ¶¶ 4- 6, 8.  Thus,

STM lacks the continuous, systematic contacts with this forum required to find residence based

on general jurisdiction.

INV's suggestion in its Amended Complaint that venue is proper because STM "invoked

the benefits and protections of this court by purposefully bringing litigation within this district,"

(D.N. 11 at ¶ 7) is both factually misleading and wrong as a matter of law.  STM has not brought

any action in the Eastern District of Texas for nearly a decade (since at least 2005) and all of its

previous cases related to memory devices or other types of semiconductors, not the MEMS

Devices accused in this action.  Powell Decl. at ¶ 4; Exs. 22-25.  *Compare Gibbons v. Brown*,

716 So. 2d 868, 870 (Fla. Dist. Ct. App. 1st Dist. 1998) (stating that a current defendant's prior

decision to bring a suit in Florida "should not act indefinitely as a sword of Damocles hanging

perilously over the head of that defendant" if it later challenges jurisdiction in a separate suit).

And, it is well-established that prior, unrelated litigation does not confer jurisdiction for all

purposes.  *See Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960); *see also Cooper v. McDermott

Int'l, Inc.*, 62 F.3d 395, 1995 WL 450209, at *4 (5th Cir. 1995) (unpublished) (citing *Dalton v.

R&W Marin, Inc.*, 897 F.2d 1359, 1363 n.4 (5th Cir. 1990)).[6]

### 2.     STM Has Committed No Acts That Could Be Accused Of Infringement In This District.

INV's blanket allegation that STM has "committed acts of patent infringement in this

_____

[6]   Similarly, a party does not "waive" or otherwise relinquish its right to challenge venue
or jurisdiction based on its participation as a defendant in prior, unrelated actions.  *Cooper*, 1995
WL 450209, at *4.  STM's prior litigation in this District is wholly irrelevant to either its venue
challenge pursuant to Fed. R. Civ. P. 12(b)(3) or it request to transfer pursuant to 28 U.S.C. §
1404.  *Genentech*, 566 F.3d at 1346.

judicial district" is unsupported and inaccurate.  D.N. 11 at ¶ 7.  The Patent Act defines infringement as making, using, offering to sell, or selling a patent invention without authority. 35 U.S.C. § 271(a).  The accused devices are developed and manufactured abroad in Europe by STM-affiliates, and STM does not sell such products to customers in the Eastern District of Texas.  Fillip Decl. at ¶¶ 4, 5, 9.

Moreover, none of STM's approved distributors of MEMS Devices maintain offices in the Eastern District of Texas with the exception of Arrow, a California-based distributor, and Avnet, an Arizona-based distributor, which maintain sales locations in Plano, Texas.  *Id.* at ¶ 8.[7] STM has never, however, sold or delivered any MEMS Devices to either Arrow's or Avnet's offices in Plano.  *Id.*  In sum, STM has not engaged in any activities in the Eastern District of Texas that could give rise to liability under 35 U.S.C. § 271 to support a finding of venue in this forum.

### 3. There Is No Basis To Assert Specific Jurisdiction Over STM

In the absence of any infringing activities here, there is no basis to find that STM resides in this District based on the standard for specific jurisdiction.  "Specific jurisdiction is based on activities that arise out of or relate to the cause of action and can exist even if the Defendant's contacts with the state are not continuous and systematic. . . . A court may exercise specific jurisdiction when (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair."  *Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *7-8 (citing *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009)).

None of these factors is present here.  As discussed above, STM has no record of any sales of the accused products, or customers, in the Eastern District of Texas.  Fillip Decl. ¶ 4, 8.

---

[7]     *See* Avnet, "Company Snapshot," *available at* www.avnet.com/en-us/about-us/Pages/default.aspx; Arrow, "Arrow Fact Sheet," *available at* www.arrow.com/about_arrow/

STM's Texas employees (all of whom work outside of the Eastern District) are wholly uninvolved in the design, development, use, or marketing of the accused products.  *Id.* at ¶ 5, 7; Peruzzi Decl. ¶ 9.  Without any relevant contacts to this jurisdiction, it is neither reasonably foreseeable nor fair for STM to be subject to suit here.  *See Princeton Digital*, 2012 WL 3647182, at *1; *see also Wi-Lan v. HTC Corp.*, No. 2:11-cv-68-JRG, 2012 WL 2461112 (E.D. Tex. Jun. 27, 2012) (Gilstrap, J.) (finding that a defendant who had never sold product to end users in the forum, never conducted marketing activities or solicited business there, and never travelled to the District to sell its products could not be subject to specific jurisdiction).

In contrast to cases previously decided by this Court, STM does not directly sell in or intentionally place its products into the "stream of commerce" bound for the Eastern District of Texas such that it can be said that STM "purposefully avail[s] itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *AFTG-TG LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012).  While the precise contours of the "stream of commerce" theory of jurisdiction remain undecided by the Federal Circuit, in all cases where jurisdiction has been found, the defendant either itself or through its related intermediaries distributed accused products in the forum.  *See, e.g.*, *Frito-Lay N. Am. Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 867 (E.D. Tex. Mar. 30, 2012) (sales by defendant's subsidiary in the forum supported jurisdiction); *800 Adept, Inc. v. Enterprise Rent-a-Car*, 545 F. Supp. 2d 562 (E.D. Tex. Feb. 11, 2008) (defendant accused of using patented method to route calls to locations within the Eastern District).

Here, while some of STM's accused gyroscopes <u>may</u> end up in downstream devices sold in the Eastern District of Texas, STM has made no direct sales to any distributor or customer in this District.  Fillip Decl. ¶¶ 4, 8.  *See, e.g.*, *Adell Corp. v. Elco Textron, Inc.*, 51 F. Supp. 2d 752, 755 (N.D. Tex. 1999) *dismissed by*, 215 F.3d 1350 (Fed. Cir. 1999) (concluding the court lacked personal jurisdiction because defendant "does not ship the device to an established intermediary

who then sells the device in Texas"). While STM has made some sales to domestic customers, including distributors *outside* of the Eastern District of Texas, STM's sales to its customers are arms-length transactions that cannot serve as a basis for finding specific jurisdiction. Fillip Decl. ¶¶ 4, 8; *see, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) (defendant must "know the likely destination of the products" intentionally placed in the stream of commerce); *see also Garnet Digital LLC v. Apple Inc.*, 893 F. Supp. 2d 814, 816-17 (E.D. Tex. 2012) ("The test for minimum contacts focuses on *defendant's* actions with the forum state and not a third party's independent actions."). Unlike cases where specific jurisdiction has been found, STM "has no input on [its customers'] distribution, it provides no warranties to Texas customers, it has no advertising [directed to] Texas, and it has no direct sales of the accused device" in this District. *Adell Corp.*, 51 F. Supp. 2d at 755.

Similarly, though STM's foreign parent maintains a global website through which potential customers can access information regarding distributors for certain of its MEMS devices and other products, neither STM nor its parent offer for sale or sell either of the accused products through the website. *Compare* Fillip Decl. ¶ 9 and Powell Decl. Exs. 30-31 *with Variant Inc. v. Flexol Packaging Corp.*, No. 6:08 CV 478, 2009 WL 3082581, at *2 (E.D. Tex. 2009) (website used by its owners to "engage in repeated online contacts with forum residents"); *see also Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804 (D. Md. 2004) (defendant's maintenance of a website, through which it only sold two accused products in the District (to affiliates of plaintiff) was insufficient to confer jurisdiction).

STM's website is interactive in only a limited capacity – it lists some of STM's MEMS devices and identifies distributors for a subset of those; for a handful of MEMS products, the website provides a direct link to a distributor from whom the product may be ordered. Powell Decl. Exs. 30-31. By way of example, the L3G4200D and LSM330 accused MEMS Devices are listed on the website, which also provides an electronic specification and links to allow a user to

contact or purchase from one of STM's authorized distributors; however, it is not possible to purchase the products directly from STM through the website. *Id.* at Ex. 31. ST.com is a passive website and is not a primary means by which STM or its affiliates contacts customers, makes sales, or generates revenue.

In any event, the website which is exclusively owned and maintained by STM's corporate parent (not STM), cannot be imputed to STM for the purposes of conferring jurisdiction over the U.S. entity that is the only named defendant in this case. Fillip Decl. ¶ 9; *see Globeranger Corp. v. Software AG*, No. 3:11-cv-0403-B, 2013 WL 1499357, at *6 (N.D. Tex. Apr. 12, 2013). In view of the sparse allegations in the Amended Complaint relating to venue, and the absence of any contact between STM and this District, this Court should dismiss INV's Amended Complaint for improper venue.

**B.    Alternatively, The Court Should Transfer This Case To The Northern District Of California For The Convenience Of The Parties And Witnesses**

If the Court determines that immediate dismissal is not warranted, it should transfer the litigation to the Northern District of California to prevent prejudice to STM and the numerous third-party witnesses who will be inconvenienced (or completely unavailable) if this litigation moves forward in Marshall. *Volkswagen*, 545 F.3d at 313 ("The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."). As in other cases where the Federal Circuit has mandated a transfer, "[t]his case features a stark contrast in the relevance, convenience, and fairness between the two venues." *Nintendo*, 589 F.3d at 1198.

**1.    The Northern District Of California Is A Proper Venue**

As a threshold matter, the claims could have been properly filed in the Northern District of California. *See Wireless Recognition Technologies, LLC v. A9.com*, Case No. 2:10-cv-364-JRG, et al., 2012 U.S. Dist. LEXIS 19210, at *9-10 (E.D. Tex. Feb. 15, 2012). "The California long-arm statute is co-extensive with the limits of federal due process," thus the only issue is

whether STM "has the requisite 'minimum contacts' with California" such that "the exercise of jurisdiction comports with due process." *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *8. Indisputably, it does.

A primary purpose of the STM's Santa Clara, California office is to support STM's MEMS customers, including by providing engineering support, technical marketing, and post-sale customer support. Peruzzi Decl. ¶¶ 3-5. As discussed above, STM provides pre- and post-sale technical marketing and support to the U.S.-based companies in whose downstream consumer electronics devices the MEMS Devices may end up. *Id*.; Fillip Decl. ¶ 6; *Compare Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *8-9. Moreover, INV could obviously have brought its present patent infringement claims in the Northern District of California (as counterclaims or otherwise), where it already has two patent counterclaims pending against STM for alleged infringement by the same accused STM MEMS Devices.[8]

## 2.    The Convenience And Cost of Attendance For Witnesses Favors Transfer

Transferring this case to the Northern District of California is clearly more convenient for the parties and their witnesses than letting INV engage in an unnecessary, multi-front war wherein INV seeks the same exact relief against the same accused MEMS Devices. "'The convenience of the witnesses is probably the single most important factor in a transfer analysis.'" *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *17 (quoting *Genentech*, 566 F.3d at 1342); *see also Nintendo*, 589 F.3d at 1198. While the convenience of non-parties "is accorded greater weight," the location and convenience of all witnesses (party and non-party) must be considered in the transfer analysis. *Network Protection Sciences*, 2012 U.S. Dist.

---

[8]    Alternatively, the case could have been brought in the United States District Court for the Northern District of Texas, where STM is headquartered. However, the Northern District of Texas lacks the magnitude of relevant contacts with this case that are present in the Northern District of California, and would therefore be a substantially more inconvenient venue for the majority of party and non-party witnesses.

LEXIS 7575, at *9 (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000)).  In this case, the Northern District of California is the locus of party and non-party witnesses relevant to INV's claims.  As shown below, this factor weighs decisively in favor of transfer.

### (a)   Third-Party Witnesses Located In And Around The Northern District Of California

Nearly all known, material third-party witnesses are located in or around the Northern District of California.  For example, the third-party prosecuting attorneys from the Sawyer Law Group identified on the face of the asserted INV patents are located in Palo Alto, California, which is within the Northern District of California.  *See* D.N. 11 at Exs. A-C.  Third-party attorneys who have been involved on INV's behalf in licensing negotiations with STM (and likely other companies),[9] and who have knowledge regarding such licensing activities, are also located in the Northern District of California.  Powell Decl. Exs. 32-33.

Also in California are several third-party customers with knowledge relevant to INV's indirect infringement allegations, as are a multitude of companies likely to have relevant prior art.[10]  The 25 third-party witnesses in California of which STM is currently aware are set forth in Appendix A to the Declaration of Michael Powell.  *See also* Powell Decl. at ¶ 2, App. A; Peruzzi Decl. ¶ 5.

STM is currently unaware of any third-party witnesses located in the Eastern District of Texas.  Powell Decl. at App. A.  No prosecuting counsel identified on the asserted patents nor any inventors of assignees of known prior art are located in the Eastern District of Texas.  Powell

---

[9]   According to INV, it does not have in-house counsel and, therefore, relies exclusively on these outside counsel for litigation and licensing matters.  *See, e.g.*, InvenSense Corporate FAQ, *available at* http://www.invensense.com/mems/faq.html (last visited Jun. 15, 2013).

[10]   *Compare Rmail Ltd. v. Docusign, Inc.*, 2:11-cv-299-JRG, 2012 WL 1416299, at 83 (E.D. Tex. Apr. 24, 2013) (determining that the location of customers and prior art witnesses supported venue).

Decl. at Apps. A, B; Exs. 15-21.  And, as discussed above, STM has no customers in the Eastern District of Texas (or any witnesses that would have unique, relevant knowledge regarding the accused MEMS Devices or STM's alleged infringement).   STM's other major domestic customers of the accused products are located in the pacific northwest, in Oregon (Nike) and Washington (Microsoft and Amazon), Peruzzi Decl. ¶ 5, which this Court has found to be more convenient to the Northern District of California than to the Eastern District of Texas, *see, e.g.*, *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *18; *Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *18.

Additionally, based on publicly-available information, it appears that an inventor of the asserted '921 patent, Mr. Babek Tahiri, is currently employed by Freescale in Tempe, Arizona, several hundred miles closer to the Northern District of California than to the Eastern District of Texas, making travel to the transferee venue more convenient and cheaper for this witness. Powell Decl. Ex. 24; *see also* Ex. 34-35.

> *(b)   Party Witnesses Located In Or Around The Northern District Of California*

Most of the U.S.-based party witnesses are located in the Northern District of California. Indeed, INV maintains its principal place of business in the Northern District of California, and most of its relevant employees are located in Sunnyvale, California.  Powell Decl. Ex. 13; *see also* Ex. 36-38.  INV clearly cannot complain that the Northern District of California is a less convenient forum given that its headquarters and most of its employees are there.  *See In re Acer*, 626 F.3d 1252 (Fed. Cir. 2010); *Voxpath*, 2012 U.S. Dist. LEXIS 7569, at *17-18 (citing *Acer*, 626 F.3d at 1254); *see also Empty Barge Lines II, Inc. v. Fisher*, 441 F. Supp. 2d 786, 797 (E.D. Tex. 2006); *Shoemaker v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828 (E.D. Tex. 2002) (finding

that the plaintiff's choice of forum is subject to "close scrutiny" when it chooses to sue outside its home district).[11]

For example, all of the inventors of the patents-in-suit who are still employed by INV are located in Sunnyvale, CA, including its current Director of MEMS Development, Joseph Seeger, and Board Member and former CEO, Steven Nasiri.  Powell Decl. Ex. 16-18, 39.  Seeger is a named inventor of the '717 patent and Nasiri is a named inventor of the '773 and '921 patents. *See* D.N. 11 at Ex. A-C.  Ten of INV's key party witnesses as well as additional employees with knowledge regarding financial and licensing issues relevant to remedies and STM's equitable defenses are located in Sunnyvale.  *See* Powell Decl. App. B.

STM also maintains a substantial presence in the Northern District of California.  Its office in Santa Clara, California is a hub of U.S. activities potentially relevant to this case.  Fillip Decl. ¶ 6; Peruzzi Decl. ¶¶ 3-6; *see, e.g.*, *Voxpath*,  2012 U.S. Dist. LEXIS 7569, at *15; *see also Lodsys LLC v. Brother Int'l Corp.*, No. 2:11-cv-90-JRG, 2013 WL 1338767, at *4 (E.D. Tex. Jan. 14, 2013) (regional hub office located in the venue supported a finding that forum was convenient for litigation).  STM's employees in Santa Clara provide marketing, customer support, and technical design-in work that INV alleges is relevant to its "indirect infringement" allegations in its Amended Complaint.  Peruzzi Decl. ¶¶ 3-5.  Moreover, several of STM's Santa Clara employees have relevant technical knowledge of the accused products and are involved in designing and adapting those products for use in particular customers' downstream products.  *Id.* at ¶ 4; *see Genentech,* 566 F.3d at 1343 (location of witnesses with relevant technical knowledge a factor).

---

[11] This case is very different from *Portal Technologies LLC v. Yahoo, Inc.*, in which this Court denied transfer on the basis that the witnesses and sources of proof were located all over the world and not concentrated in a particular location.  2012 WL 3242205, at *2 (E.D. Tex. Aug. 7, 2012).  Most importantly, unlike in *Portal*, the plaintiff in this case is not located in the Eastern District of Texas and neither party has any material relationship with the forum.  *See supra* Section II.B.

In sum, at least 10 STM witnesses located in the Northern District of California are likely to present relevant evidence in this case.  Peruzzi Decl. at ¶ 4.  These witnesses handle STM's west-coast customers and different aspects of product marketing and support, and have non-cumulative, relevant knowledge regarding the accused products, alleged indirect infringement, and remedies at issue in this case.  *Id*.  If this Court does not transfer this case, these party witnesses would have to suffer the significant inconvenience of traveling over 1600 miles to attend trial.  *Nintendo*, 589 F.3d at 1198 (quoting *Volkswagen*, 545 F.3d at 317 (5th Cir. 2008) ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'").

### (c)      *Locations Of Other Potentially Relevant Witnesses*

No known relevant employees, inventors, or officers of INV reside in Texas. Additionally, though STM's domestic headquarters are located in Coppell, Texas – in the Northern District of Texas, not the Eastern District – it appears that, at ***most***, two STM employees who may have potentially relevant personal knowledge work in Coppell, Texas.  *Id*.; Fillip Decl. at ¶ 7.  Two STM employees who were involved in licensing negotiations with INV (though not on the asserted patents) work in the Coppell, Texas office.  *Id*..  As far as STM is aware, no other Texas-based STM witness has knowledge relevant to the issues in this litigation.[12]  *Id*.; Peruzzi Decl. ¶ 7.  Additionally, since Coppell, Texas is located more than 100 miles from Marshall, Texas, maintaining the litigation in this District would not be convenient

---

[12] That STM's headquarters are located in Texas is a not a consideration that, itself, should weigh against transfer since STM has not attempted to manipulate venue by moving relevant witnesses or documents.  *Compare MobileMedia Idea, LLC v. HTC Corp.*, No. 2:10-cv-112 JRG, 2012 WL 1570136, at *2 (E.D. Tex. May 3, 2012).  To the extent INV argues that STM's status as a Texas-headquartered corporation "and its strong ties to Texas warrant consideration in this venue analysis" (though such ties are not with the Eastern District of Texas), STM contends that this argument is contrary to Federal Circuit precedent.  *Compare id.* at *4 with Genentech*, 566 F.3d 1338.

for these two Texas-based witnesses either.  *See, e.g.*, *Volkswagen*, 545 F.3d at 317 (finding that Dallas could not be characterized as "convenient" to Marshall).   Under Federal Circuit law, where the substantial weight of material evidence and witnesses is situated in the transferee venue, the presence of a small number of witnesses in Texas is insufficient to justify denying STM's transfer request.  *See Nintendo*, 589 F.3d at 1199-1200; *Genentech*, 566 F.3d at 1345.

STM's witnesses on technical issues, including issues relating to the development of the accused products, are located abroad, including in Milan, Italy.  Fillip Decl. ¶ 5.  Though Italy is a substantial distance away from both Texas and California, it is substantially more convenient to reach San Francisco than it is to travel to Marshall.  For example, travelers from Milan to San Francisco have numerous flight options and can fly with only a single-stop over, such that total travel time may be as short as 14 hours.  Powell Decl. Exs. 40-41.  By comparison, travel from Milan to the nearest airport to Marshall, located in Longmont, TX, requires a connection to one of only two daily flights from Dallas, and total flight time of 17-24 hours, followed by a 40-minute drive by car.  *Id.* at Exs. 42-43.  In any event, even if the Court decides to discount the convenience of the foreign witnesses, the locus of known witnesses in the United States remains the Northern District of California.  *Genentech*, 566 F.3d at 1344.

In sum, the prevailing fact remains that 46 of the 48 known witnesses reside in California (the transferee forum); only two potential witnesses reside in Texas; and ***no*** witnesses reside in Marshall.  Under these circumstances, the convenience of the witnesses weighs heavily in favor of transfer.  *Nintendo*, 589 F.3d at 1199-1200; *Genentech*, 566 F.3d at 1345 ("Because a substantial number of material witnesses reside within the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer."); *see also Voxpath*,  2012 U.S. Dist. LEXIS 7569, at *18.  Where, as here, "[t]he number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party

witnesses with relevant information residing in Northern California," this Court has adjudged the matter proper for transfer.  *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *19; *Voxpath*, 2012 U.S. Dist. LEXIS 7569, at *18.  Thus, this factor weighs in favor of transfer.

### 3.      Access To Sources Of Proof Favors Transfer To California.

"Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor."  *Id.* (collecting cases).  In this case, **no** relevant sources of proof are located in the Eastern District of Texas.  Nor does STM know of any unique sources of proof located in Texas.  *Compare Wireless Recognition Technologies, LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, et al., 2012 WL 50669, (E.D. Tex. Feb. 15, 2012); *see also Acer*, 626 F.3d at 1256 (finding that though defendant's headquarters were in Texas, this fact alone did not outweigh the justification for transfer when substantial sources of evidence were located in the transferee venue).

All of the third-party proof of which STM is aware is located outside of Texas and is generally in the Northern District of California.  For example, the prosecuting attorneys' files are likely located in their offices in the Northern District of California.  *Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *12.  Similarly, relevant documents maintained by third-party prior art witnesses and customer witnesses identified above in Section IV.B.2, *supra*, likely reside with them in the Northern District of California.

Importantly, all of the relevant proof maintained by INV, including its documents relating to any analysis of infringement, prosecution of the asserted patents, and development of the claimed technology, are likely located in the Northern District of California, where INV is headquartered.  *Voxpath*,  2012 U.S. Dist. LEXIS 7569, at *19-20 (location of "infringement studies" relevant); *Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *11-12 (location of prosecution and technical development documents is relevant).

Additionally, much of STM's documentary proof, including documents relating to the "marketing, sales, and pricing" of the allegedly infringing products, as well as documents

relating to STM's design-in work and customer support, are located in Santa Clara. Peruzzi Decl. ¶ 6.[13]  *See Acer*, 626 F.3d at 1256 (identifying sources of "marketing, sales, and pricing" evidence as relevant); *Voxpath*, 2012 U.S. Dist. LEXIS 7569, at *18 (sources of documents "concerning the sale of the accused products" deemed relevant to transfer); *see also Genentech*, 566 F.3d at 1345 (location of accused infringer's proof generally considered to be the most material in a patent case).  Other design documents are located abroad, where development and manufacturing of the accused products occurs; and there are no relevant document repositories in the Eastern District of Texas.  Fillip Decl. ¶¶ 5, 8.

Where, as here, substantial, material evidence is located in the transferee venue, this factor weighs decisively in favor of transfer.  *Genentech,* 566 F.3d at 1346; *Wireless Recognition Technologies, LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, et al., 2012 WL 50669 (E.D. Tex. Feb. 15, 2012).  The existence of some sources of proof outside of the Northern District of California, but not located in Eastern District of Texas, has no impact on this conclusion because such proof will have to be transferred regardless of the ultimate destination of the litigation.  *Id.*; *Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *14 (citing *Acer*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (finding that documents subject to transfer regardless of forum do not support the convenience of one venue over another).  Thus, this factor weighs decisively in favor of transfer.

### 4.    Availability Of Compulsory Process Favors Transfer To California.

The third private interest factor "is the availability of compulsory process" to secure the attendance of relevant witnesses.  *Genentech*, 566 F.3d at 1345 (citing Fed. R. Civ. P. 45(b)(2)). "A venue that has 'absolute subpoena power for both deposition and trial' is favored over one

---

[13]    Some such documents may also be maintained in STM's regional offices, such as in Redmond, Washington; Aliso Viejo, California; and Longmont, Colorado.  However, the bulk of the relevant documentation in this regard will come from Santa Clara.  Peruzzi Decl. ¶ 6; Fillip Decl. ¶ 8.

that does not." *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *15; *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.")  In this case, only the Northern District of California has absolute subpoena power over relevant witnesses; this Court does not.

No known third-party witnesses work or reside within 100 miles from the courthouse in Marshall (and over whom this Court could exercise absolute subpoena power).  By comparison, as discussed above, known third-party prior art witnesses, customer witnesses, prosecuting attorneys, and licensing counsel for INV are all located in the Northern District of California; would be subject to that Court's subpoena power; and could be compelled, as necessary, to testify at trial.  *Compare Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *16 (finding subpoena power over prior art and prosecuting attorney witnesses weighed in favor of transfer) *with*  Powell Decl. Apps. A, B; Peruzzi ¶ 5.

Additionally, none of the parties' own witnesses (other than those found to be officers) could be compelled to attend trial in the Eastern District of Texas either.  Fed. R. Civ. P. 45(b)(2)(B)-(C), 45(c)(3)(A); *Cottrell v. Costco Wholesale Corp.*, Civ. No. 10-3154 (MJD/JJK), 2012 WL 3779143, at *3 (D. Minn. Aug. 31, 2012) (citing *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, 262 F.R.D. 293, 302 (S.D.N.Y. 2009)).  While this Court generally considers nonparties in assessing this factor, there are several party witnesses that would not be subject to this Court's absolute subpoena power.[14]  *See, e.g.*, Powell Decl. App. B.

_____

[14]    *v. Dentsply Int'l, Inc.*, 2009 WL 3672499 (D.N.M. Sept. 29, 2009) (concluding that Fed. R. Civ. P. 45(c)(93)(A) would require the court to quash any subpoena it issued on a non-officer employee and, therefore, declining to issue the requested subpoenas, but noting split of authority).  Regardless, this cloud of uncertainty regarding the ability to compel non-officer, party-affiliated witnesses to appear at trial counsels towards selecting a venue where a majority of relevant non-officer, party-affiliated witnesses reside or are otherwise indisputably subject to compulsory process.

### 5.    Other Practical Issues Favor Transfer To California.

In assessing a request for transfer, the Court also considers other practical considerations that affect the relative convenience of the venues under consideration.  One factor that this Court has considered "paramount" in identifying the appropriate forum for litigation is the existence of prior or on-going related litigation.  *See, e.g.*, *Princeton Digital*, 2012 U.S. Dist. LEXIS 119432, at *8 (quoting *In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011)).  Even where the pending litigations "do not perfectly overlap," this Court has found that consolidation before a single tribunal promotes efficient adjudication for the parties and court "where there is only a common question of law or fact."  *Compare Portal Technologies, LLC v. Yahoo, Inc.*, No. 2:11-cv-440-JRG, 2012 WL 3242205 (E.D. Tex. Aug. 7, 2012) (finding overlap in the technologies-at-issue should be considered in selecting the appropriate forum).

Here, the parties have been engaged in litigation in the Northern District of California for over a year, since May 2012.  Powell Decl. Ex. 1.  In the original case brought by STM, INV asserted two counterclaims for patent infringement on July 6, 2012, accusing the same STM MEMS Devices  of infringement as it accuses here in its Amended Complaint – specifically the LSM330 and L3G4200D four-mass gyroscopes.  *Compare id*. at Ex. 2 at Count 19, 20 *with* D.N. 11 at ¶¶ 24, 31, 37.

Instead of bringing this action in Marshall, INV could have simply amended its Answer in the first-filed Northern District of California case, where it already had counterclaims pending for patent infringement, to add the patents at issue here.[15]  In doing so, however, those patents would have been subject to the Northern District of California Court's order (entered at INV's request) staying INV's previously filed patent case.  Powell Decl. Ex. 6 (Order Denying Stay); Ex. 8 (Order Granting Stay).  Indeed, the California Court denied INV's first motion to stay at

---

[15]    Each of the patents-in-suit in this action issued well before the stay in the Northern District of California action was entered on February 27, 2013.

least in part because INV sought to put STM's case on hold while permitting INV to pursue its own offensive claims.  *Id*.  Only after INV filed a second motion and explicitly requested that the stay apply to both parties' asserted claims "***to alleviate any claimed prejudice from a one-sided stay,***" did the Court agree to stay the entire litigation.  *Id*. at Ex. 8 at 4.

In effect, INV's promise to forego its own patent infringement claims against STM throughout the duration of the stay was the *quid pro quo* for staying STM's infringement claims against INV in the first-filed Northern District of California action.[16]  Had INV filed the present infringement suit in the Northern District of California, the Court would almost certainly have foreclosed INV's attempt to avoid the terms of the stay it so desperately sought and thereby gain the precise type of unfair tactical advantage that the Court in California found warranted denial of INV's first motion for a partial stay of proceedings.  To avoid that result, and in breach of the promise it made to the Court in California to secure a stay of STM's infringement action there, INV filed its new patent case here in Marshall.  INV should not be permitted to obtain a litigation advantage through such machinations, in what can only be viewed as a strategic and tactical attempt to move forward on its patent infringement case here while STM's first-filed patent infringement action remains on hold.

While STM anticipates that INV will argue (as it did in its motion to stay the ITC proceedings) that STM's ITC Investigation was filed in circumvention of the Northern District of California stay order (which STM vigorously opposed), this argument is without merit.  As the Commission and ALJ in the ITC action already found, the proceedings and relief at issue in the ITC administrative proceedings are substantially different from those afforded by District Court

---

[16]    The second-filed Northern District of California case is stayed based on statutory mandate until the parallel ITC litigation is decided.  28 U.S.C. § 1659(a).  STM contemplates that once the Investigation has ended, the California Litigation will be consolidated or coordinated.  However, for the time-being the second-filed Northern District of California case is merely a place-holder while the ITC Investigation is being adjudicated.

litigation.  *Id*.  Moreover, it is INV that first chose to initiate parallel administrative proceedings after STM filed the original Northern District of California action.  In its proceedings before the USPTO, INV is aggressively pursuing reexaminations or *inter partes* review of all of STM's asserted patents.  Thus, STM's ITC Investigation merely restores the parties to a level playing field and permits STM to pursue at least some form of relief for INV's infringement while its District Court claims are all stayed.  Regardless, if INV believed that it was at a strategic disadvantage because of STM's ITC Investigation – which the Commission and the ALJ declined to stay despite INV's request that they do so – the appropriate course of action was to return to the Northern District of California and seek redress in that forum by filing its counterclaims and requesting that the stay of litigation it so zealously pursued be lifted. Permitting INV to maintain its litigation in this District, while continuing to press for a stay of the parallel litigation, undermines the orderly, effective, and fair administration of justice. *Princeton Digital,* U.S. Dist. LEXIS 119432, at *8.

The two actions, which implicate the same technology, the same accused products, and many of the same witnesses and sources of evidence, would benefit from consolidation, or at least coordination, of discovery, depositions, and other proceedings in a single district.  *Id*.  By comparison, allowing INV to proceed with these claims in this District, while simultaneously maintaining its earlier-filed counterclaims in the Northern District of California, permits "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts," which this Court has found "leads to [the] wastefulness of time, energy, and money that § 1404(a) was designed to prevent."  *Id*.  Thus, under both the private interest factor of "practical problems" and the public interest factor of "judicial economy," the Court should afford substantial weight to the already-pending litigation involving the same issues between the same parties.  *Id*.

By comparison, INV's allegations in its Amended Complaint – that this venue is

appropriate because STM brought an unrelated lawsuit here a decade ago – has been rejected by this Court and the Federal Circuit. *See, e.g., Genentech*, 566 F.3d at 1346 (prior litigation that does not involve the "same parties, witnesses, evidence, and facts" is irrelevant to the transfer analysis). STM's prior litigations did not involve the same parties or technology, were related to different types of products (e.g., memory devices), were filed nearly a decade ago, and are all now closed. Thus, this factor weighs in favor of transfer.

### 6. Public Interest Factors Favor Transfer To California.[17]

As discussed above, the public interest in judicial economy weighs strongly in favor of transfer. In addition, the Northern District of California's local interest in adjudicating the dispute involving a local company plaintiff who is actively seeking to expand in the district, with local inventors' and prosecuting attorneys' testimony at issue, is substantially greater than the interest of this District, which has no meaningful contact to the dispute at all. *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citing *Genentech*, 566 F.3d at 1347); *In re Acer*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *20-21; *Voxpath*, 2012 U.S. Dist. LEXIS 7569, at *23 (the citizens of the Northern District of California "have an interest in adjudicating a dispute which calls into question the work and reputation of business located within and individuals working in their locale rather than the Eastern District of Texas") (citing *Hoffmann-La Roche*, 587 F.3d at 1336). In addition, the fight between INV and STM is fundamentally over customers and market share in the consumer electronics MEMS market, nearly all the relevant U.S. participants in which are located in Silicon Valley.

---

[17] Given the equivalency of the time to trial in the Northern District of California and this District, and both Court's familiarity with patent law, STM believes these public interest factors are neutral in the transfer analysis. *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at *19-21. In any event, considering that the parallel litigation is stayed at INV's behest, the fact that a trial could be reached more quickly here would only reward INV for its unabashed efforts to avoid a stay it originally requested – thus this factor should not be considered at all.

On the other hand, the considerable burden of jury duty "ought not to be imposed upon the people of a community which has no relation to the litigation." *Network Protection Sciences*, 2012 U.S. Dist. LEXIS 7575, at \*20 (quoting *Volkswagen*, 371 F.3d at 206); *see also Nintendo*, 589 F.3d at 1198 ("The Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market.").

Thus, this factor weighs decisively in favor of transfer.

## VI.    CONCLUSION

The facts here establish that neither the plaintiff nor the defendant have any material connection with this District, making venue plainly improper.   Moreover, an analysis of the factors relevant to transfer under § 1404 all weigh strongly in favor of sending this case to the Northern District of California to be adjudicated with the parties' earlier filed litigation.   For all the foregoing reasons, STM respectfully requests that this Court either dismiss this action, or transfer this litigation to the United States District Court for the Northern District of California.

Dated:  July 17, 2013                    Respectfully submitted,

                                          */s/ Michael D. Powell*
                                          _____

                                          Mark J. Mann
                                          Mann Tindel & Thompson Law Group
                                          300 West Main Street
                                          Henderson, Texas 75652
                                          Tel: (903) 657-8540
                                          Fax: (903) 657-6003
                                          Email: Mark@TheMannFirm.com

                                          Charles K. Verhoeven
                                          Sean S. Pak
                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                          50 California Street, 22nd Floor
                                          San Francisco, CA 94111
                                          Tel.: (415) 875-6600
                                          Fax: (415) 875-6700
                                          E-mail: SeanPak@quinnemanuel.com

                                          Michael D. Powell
                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                          555 Twin Dolphin Drive, 5th Floor
                                          Redwood Shores, CA 94065
                                          Tel.: (650) 801-5000
                                          Fax: (650) 801-5100
                                          E-mail: mikepowell@quinnemanuel.com

                                          *Counsel for defendant STMicroelectronics, Inc.*