IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INVENSENSE, INC.,<br><br>          Plaintiff,<br><br>    v.<br><br>STMICROELECTRONICS, INC.,<br>STMICROELECTRONICS N.V., AND<br>DOES 1 through 9, inclusive,<br><br>          Defendants. | Civil Action No. 2:13-cv-405-JRG<br><br>**JURY TRIAL DEMANDED** |

## JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff InvenSense, Inc. ("INVN") and Defendant STMicroelectronics, Inc. ("STM") move this Court to enter a Protective Order governing the handling of confidential information.[1] [2] InvenSense and STM were able to agree on much of the Protective Order language except for paragraphs 8 – regarding the definition of "Source Code Materials"; 10(h) – regarding printing source code; 11 (fn. 3) – regarding removing DESIGNATED MATERIAL from the United States; and 32 – regarding review by a designated party employee. InvenSense's proposed Protective Order is attached as Exhibit A. STM's proposed Protective Order is attached as Exhibit B. Where differences exist, INVN and STM have listed their competitive proposals in the table below. Additionally, INVN and STM's respective positions on the disputed provisions are set forth below.

Accordingly, the parties respectfully request that the Court enter a Protective Order and resolve the disputed language where indicated.

---

[1] INVN contends that Defendant STMicroelectronics N.V. ("STNV") was added to this case on September 10 and has been served with the second amended complaint but has not yet entered an appearance.

[2] STM contends that INVN has not properly served STNV, which is based in the Netherlands and must be served with process according to the Hague Convention. STM further contends that, even if it had been served, STNV is not a proper party to this case.

## I.      Paragraph 8 – Source Code

| **INVN's Proposal** | **STM's Proposal** |
|---|---|
| INVN proposes using the Court's model language verbatim:<br><br>To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code and/or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE." | STM proposes defining "Source Code Materials" identically to how the parties agreed to define "Source Code" in the ITC Investigation (in underlines):<br><br>To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "RESTRICTED -- ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes "Source Code Material", the producing Party may designate such Protected Material as "RESTRICTED CONFIDENTIAL SOURCE CODE."  For purposes of this protective order, "Source Code Material" shall mean highly confidential and proprietary  source code (human-readable computer programming language text and associated comments and revision histories), and engineering specifications, design schematics, or other documents that define or otherwise describe in detail the algorithms or structure of the source code software design or that describe in detail confidential hardware designs or manufacturing steps (e.g., process flows, recipes, layout files (e.g., GDS), Gerber files, etc.). |

Plaintiff's Statement:

InvenSense proposes using the model order, which contains a solid and meaningful

definition of source code and which is not overly expansive.  Using STM's broad proposed

definition of source code would allow STM to improperly designate large volumes (if not all) of

its product documentation relevant to infringement as source code and thereby impose undue

burdens on InvenSense with respect to the evaluation and use thereof (especially if coupled with

the restrictive printing requirements discussed below).  STM's definition of source code goes well beyond source code to include almost all technical documentation of the infringing features of STM's products.  It even includes "engineering specifications" – documents that cannot by any stretch be considered software or source code – and also includes design schematics (definitely not source code) and "hardware designs" (definitely not source code).  STM is, in essence, attempting to place all of its technical documents into the source code category to impose undue burden on Plaintiff in reviewing the documents.  These documents are already afforded strong protection by the "RESTRICTED – ATTORNEYS' EYES ONLY" category of protection in the portions of the model order on which the parties agree.  STM cannot show any need – beyond imposing burden – for permitting it to place all of its technical documents into the source code category.

It is true INVN and STM agreed to STM's proposed definition in a co-pending USITC action.  However, that action is different from this case in many aspects.  This case involves a very different model protective order (with three confidentiality levels as opposed to two levels at the ITC), different patents and parties, and here INVN's patents are being asserted – and so INVN will like do most of the source code review (of STM's products).  In the USITC action, only STM's patents are asserted and so and so INVN was deferential to STM's proposal that imposed burden primarily on itself, not INVN.  Here, however, STM attempts to reverse the burden in a manner that is not acceptable to INVN, in the guise of arguing equity with a co-pending ITC case; if STM wishes to impose unreasonable burden upon itself (as it did in the ITC case), it may do so, and INVN will not object.  But INVN does object to STM attempting to impose undue burden on INVN through proposing its overly broad definition of source code in this case.

Also, defendant STNV has not yet made its appearance in this case yet.  STM is a wholly

owned subsidiary of STNV.  On information and belief, several products that are or will be accused in this case are designed by STNV in Europe.  Thus, it makes sense to use the Court's model language, so that this paragraph won't have to be re-negotiated when STNV makes its appearance.  The Court's model language is tried and tested and has worked well is other high technology patent cases; it will work well here too.

Defendant's Statement:

Rather than using the model order's definition for "Source Code Materials," STM proposes using the same definition agreed upon by the parties in the currently pending ITC Investigation (No. 337-TA-876).

As in the ITC Investigation, this action involves microelectromechanical system (MEMS) devices consisting of motion sensors and integrated circuits.  STM and INVN are direct competitors in the MEMs industry.  The highly confidential and proprietary aspects of MEMs devices include the algorithms and firmware they run, as well as their structural design.  Given the nature of the accused products, the default definition advocated by InvenSense does not go far enough.  In particular, it does not protect the types of technical documents—engineering specifications, design schematics, layout files, and so forth—that contain hardware- and firmware- related trade secret information equally as sensitive and confidential to STM as its source code.  These document types are just as easily replicable as source code, and just as potentially harmful (if not more so) to STM if they fall into the wrong hands.

STM's proposed definition of "Source Code Materials" is not nearly as broad as INVN contends.  In fact it is narrowly tailored to encompass only those engineering specifications, design schematics, and other documents that "define or otherwise describe in detail the algorithms or structure of the source code software design or that describe in detail confidential hardware designs or manufacturing steps."  These are the specific types of easily-copied

documents that a competitor could use with readily available computer programs to duplicate STM's proprietary processes or products—the building blocks so to speak.  All other types of technical documents that do not meet this threshold cannot be "Source Code Material."

STM's proposed definition worked for the parties all through fact discovery in the ITC. Both parties have hosted inspections of source code, native versions of design files (*e.g.*, CAD, GDS, L-EDIT), and other highly-sensitive, easily replicable design information, as well as non-source code design files for relevant third parties during the course of the ITC Investigation.  The parties have found that this format of hosting has permitted optimal use of native format files that are not easily (or usably) produced as TIFF images, but which in native would be easily copied and misused.  STM sees no reason why the definition should be changed now that INVN is the plaintiff.  Nor does STM understand why its source code and technical documents should be entitled to less protections here than INVN's are in the parallel ITC proceedings.  And the notion that, because some STM products may have been designed in Europe, the definition should be changed falls flat because the ITC Investigation involves the same products.  This is particularly true because several of InvenSense's foundry partner's files, which STM has agreed to treat as confidential source code material in the ITC at InvenSense's request, are also allegedly maintained abroad.

For all these reasons, STM respectfully requests the Court adopt its proposed definition for "Source Code Materials."

## II.       Paragraph 10(h) – Printing Source Code

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, all of which shall be designated and clearly labeled "RESTRICTED CONFIDENTIAL SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.  The receiving Party must make printouts on bates numbered and watermarked or colored paper.  The producing Party may provide the paper for printouts.  If the producing Party provides the paper, the receiving Party must use it.  If the amount of paper provided by the producing Party is insufficient, the receiving Party may use its own paper.  The producing Party must promptly (i.e., mail within two business days) provide the receiving Party with photocopies of the printouts made by the receiving party during the inspection.  If the stand alone computer is located in a third party escrow facility, the producing Party may require at its sole discretion that the third party escrow facility photocopy the printouts made by the receiving party; | The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, all of which shall be designated and clearly labeled "RESTRICTED CONFIDENTIAL SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.  The receiving Party must make printouts on bates numbered and watermarked or colored paper.  The producing Party may provide the paper for printouts.  If the producing Party provides the paper, the receiving Party must use it.  If the amount of paper provided by the producing Party is insufficient, the receiving Party may use its own paper.  The producing Party must promptly (i.e., mail within two business days) provide the receiving Party with photocopies of the printouts made by the receiving party during the inspection.  If the stand alone computer is located in a third party escrow facility, the producing Party may require at its sole discretion that the third party escrow facility photocopy the printouts made by the receiving party.  Printing portions of source code that exceed 50 continuous pages shall be rebuttably presumed to be excessive and cannot be done absent an order from the Court or agreement by the producing Party; |

Plaintiff's Statement:

The parties negotiated some additional restrictions (beyond the model order) on printing

Source Code Material to which both are amenable.  However, STM attempted to go beyond the

reasonable restrictions by defining a reasonable number of pages of printed source code at a

mere 50 pages.

STM's proposed restriction on printing is an unreasonable limitation on Plaintiff,

intended more to burden Plaintiff than to meaningfully protect STM's software source code.  The requirement of printing and retaining source code on paper is alone a meaningful and presumptive limitation on any attempt to improperly use any source code, and the model order permits only a "reasonable number of printouts and photocopies."  Yet STM attempts to limit this to 50 pages at a time.  However, some software modules can alone exceed 50 pages when printed.  (InvenSense has not yet had the opportunity to review any of STM's source code and does not know whether STM's source code includes such modules.  But source code of other companies often does.)  If InvenSense or its experts need to rely upon any such software module in connection with this case, InvenSense would be prohibited from printing such module and would be required to burden the Court with motion practice.  This is unreasonable for a fast moving case such as this where time may be of the essence in using such source code in depositions, expert reports, and/or briefing and would impose a de facto month (or longer) delay on any such use.

Moreover, the provisions of this Court's protective order should govern this issue with the minor modifications on which the parties agreed.  There is no need to impose restrictions from another case in another forum in which different counsel negotiated a different set of requirements that are overly restrictive for this case.

Finally, given STM's proposal *above* for an extremely broad definition of source code, if such proposal is adopted – and it should not be – the printing restriction would prohibit InvenSense from having practical access to large portions of the documents (including even engineering specifications and other non-software-related design documents) that will likely be used to prove infringement.  The printing restriction should not be adopted.  And if adopted, it should certainly not be adopted in conjunction with STM's over-broad proposed definition of source code.

<u>Defendant's Statement:</u>

STM proposes that the parties include the same language regarding printing restrictions they agreed to in the ITC Investigation—language INVN's counsel originally proposed to STM.

The presumption against printing over 50 *continuous* pages of source code discourages code from being reviewed in the first instance at a location other than where the inspections are supposed to take place.  It also prevents unnecessary printing of a party's highly confidential and proprietary source code, thus reducing the risk of potentially harmful inadvertent disclosure.  Contrary to INVN's characterizations, printing more than 50 pages does not "require[]" motion practice: the parties need only come to an agreement.  And it is notable that in no instance throughout fact discovery in the ITC Investigation – in which both parties' products and source code are at issue – did either side find it necessary to request more than 50 consecutive pages of the evidence identified as HIGHLY CONFIDENTIAL SOURCE CODE.

By contrast, INVN would include no restrictions whatsoever on the number of continuous pages of source code that can be printed.  In theory then, a party could print every single page of the source code made available for inspection.  This defeats the purpose of the source code inspection protections, which recognize that this information should not unnecessarily duplicated or disseminated.

STM's proposal strikes a good balance between protection and access, and should be adopted.

**III.     Paragraph 11 and Footnote 3 – Removing DESIGNATED MATERIAL from U.S.A.**

The parties believe that they are closer to reaching resolution on this issue than is indicated in the proposals below and are continuing to attempt to reach agreement on the issue.  However, given the deadline for filing the proposed protective order, the parties are filing this order with this dispute highlighted.  If the parties are able to reach agreement or narrow the scope

of the dispute, they will submit a supplement to this motion addressing that agreement or

narrowing of scope.

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| Paragraph 11: DESIGNATED MATERIAL must be stored and maintained by a receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.  *Persons identified in paragraphs 5(a), (b) and (e) may transport, communicate, receive, and have access to DESIGNATED MATERIAL outside of the United States, for use in connection with their work related to this Action.*  Absent written permission from the supplier, which permission shall not be unreasonably withheld, *DESIGNATED MATERIAL may only be disclosed at a location outside of the United States to (a) deposition witnesses during depositions, (b) court reporters at depositions who have signed the Undertaking attached as Exhibit A to this order, and (c) persons identified in paragraphs 5(a), (b), and (e).* | Paragraph 11:  DESIGNATED MATERIAL must be stored and maintained by a receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.  *Disclosure of DESIGNATED MATERIAL shall not be made to any person at any location outside the United States* absent written permission from the supplier, which permission shall not be unreasonably withheld.[3]<br><br>*Footnote 3: The Parties agree that the temporary removal of DESIGNATED MATERIAL from the United States subject to this protective order for the limited purpose of use in depositions of and preparation for depositions of witnesses employed by the Party producing such DESIGNATED MATERIAL in the course of this Investigation is reasonable, and the parties agree that each non-producing Party may bring no more than four copies of DESIGNATED MATERIAL to depositions for use by counsel, an attending expert or consultant, opposing counsel, and the witness (which copy may be left with the court reporter if marked as an exhibit for preparation of the official copy of the transcript and exhibits). The terms and conditions of any other removals of DESIGNATED MATERIALS from the United States are to be worked out by the parties on an incident-by-incident basis.* |

Plaintiff's Statement:

STM requested that the parties include a prohibition on the removal of DESIGNATED

MATERIALS from the United States.  InvenSense agrees that such a prohibition on removal of

such materials is acceptable, but if entered, must take into account the realities of today's

business and litigation world by building in some exceptions that allow attorneys and experts who are bound to preserve the DESIGNATED MATERIAL in confidence to work on this case while travelling abroad.

Rather than permitting such work, STM would seek to prohibit InvenSense's attorneys and experts from doing any meaningful work while traveling outside of the United States, by prohibiting the attorneys and experts from bringing any copies of DESIGNATED MATERIALS on their computers for work, including any drafts of expert reports, briefs, or other case materials that contain such materials.  STM would also prohibit InvenSense's attorneys and experts from meaningfully working on this case while travelling outside of the United States.  These attorneys and experts would not be able to travel with either their laptop computers or smartphones that may contain email communications or any other DESIGNATED MATERIALS.  Nor would these attorneys or experts be permitted to participate in phone calls, meetings, or video conferences in which DESIGNATED MATERIALS were discussed, to access email for fear that DESIGNATED MATERIAL would be included in an email or attachment, to access documents on their law firm's servers that may have DESIGNATED MATERIAL included, or even to access this Court's ECF system on which a party may have inadvertently publicly filed DESIGNATED MATERIAL that has not yet been sealed.  STM seeks to impose this burden despite the fact that all experts will be required to sign onto an undertaking and be bound by its terms before accessing any DESIGNATED MATERIALS and all attorneys will be bound by their duties to this Court and the provisions of the protective order.

Both InvenSense's outside counsel and the experts it has retained travel outside the United States, sometimes for extended periods.  Both counsel and experts need the ability to meaningfully continue work during such periods.  Moreover, InvenSense expects that STNV will attempt to require InvenSense's representatives to travel outside of the United States to depose

its employees and designees. If InvenSense's counsel seeks to consult with an expert during such depositions, that will require that the expert and counsel travel together outside of the United States. Both will need access to DESIGNATED MATERIALS to meaningfully prepare for the deposition or work on other aspects of the case while abroad. STM's proposal to prohibit experts from bringing their computers upon which DESIGNATED MATERIALS are stored is no more than an attempt to impose unnecessary burden and inconvenience on InvenSense and its retained experts.

Ironically, STM has already argued that its technical witnesses and "design documents" are located in Italy and "abroad." (ECF No. 19 at pp. 22, 24). Thus, it becomes clear that STM's intent is not to keep its documents in the United States, but merely to impose burden on INVN.

If the Court determines that it should enter a provision requiring storage of documents in the United States, such provision should only be entered with exceptions that allow attorneys and experts to continue working during periods in which they leave the United States.

Defendant's Statement:

The purpose of this proposed clause is to protect both parties' confidential information from disclosure, whether intentional or inadvertent, outside the United States, where the Court's ability to enforce the Protective Order is limited. As InvenSense has previously stated "InvenSense agrees that such a prohibition on removal of such material is desirable." In the course of the ITC Investigation, the parties discussed certain specific scenarios (e.g., foreign depositions) in which the exceptions to the blanket prohibition against extraterritorial may apply – and agreed that such exceptions should be governed by specific rules and generally circumscribed to the extent possible to limit the risk of inadvertent disclosure.

For example, in the ITC, the parties worked out a specific process for appropriately using confidential material during the course of depositions outside the United States. Recognizing the

heightened risk of inadvertent disclosure caused by improperly retaining, copying, or even disposing of hard copies of DESIGNATED MATERIAL abroad, the parties carefully carved out a specific process (which is reflected in STM's proposal) for use of DESIGNATED MATERIAL in foreign depositions.  The process, reflected in the footnote drafted by InvenSense's counsel in the ITC Investigation,  includes limitations on the number of copies and the requirements for disposing of the copies that are tailored to the specific circumstances imposed by foreign depositions.

The language of STM's proposed rule makes clear that the parties are expected to work out similar, specific agreements for other uses of DESIGNATED MATERIAL necessitated by this litigation, and STM is committed to doing so.  As indicated above, to the extent that InvenSense identifies specific situations in which its counsel's use of DESIGNATED MATERIAL abroad is necessary, STM is amenable to working out appropriate access and memorializing those agreements in writing whether informally or as part of the protective order.

But InvenSense's proposed territorial limitation is drafted so that the exceptions swallow the rule.  It is certainly broader than is reasonably necessary to permit InvenSense and its representatives to "meaningfully continue work during . . . periods" of international travel.  The risk of inadvertent (or intentional) disclosure of confidential material outside the United States, including to individuals who are no subject to this Court's jurisdiction, is simply too high and the potential injury too substantial to support universal access to DESIGNATED MATERIAL by experts or counsel outside the United States without further explanation of the circumstances necessitating and surrounding such disclosure as well as the development of mutually agreeable limitations to circumscribe the risk attendant with such uses.

Again, that STM may maintain some of its own confidential material, at its own offices, using its own secure systems (which are only accessible by its own personnel) abroad, does not

undermine the necessity of the territorial limitation.  To the contrary, the high level of security afforded to confidential material at all ST locations, in the United States and abroad, only supports the necessity of a Protective Order that prevents undermining those security protocols in the course of litigation.

IV.     **Paragraph 32 – Review By Designated Employee**

| Plaintiff's Proposal | Defendant's Proposal |
| --- | --- |
| Notwithstanding the provisions of Paragraph 9, one designated representative of each of the Parties can review all expert reports and pleadings (including drafts) that are exchanged or filed in this case, even where DESIGNATED MATERIAL is included the expert reports and the pleadings.  The designated representative of a Party must be disclosed to the other Party.  The designated representatives must agree to be bound by this Order and must sign the acknowledgement form attached hereto as Appendix A. | [[Do not include this paragraph.]] |

Plaintiff's Statement:

Plaintiff respectfully submits that the case will be better managed and supervised and chances of an out of court resolution of this case will improve if designated representatives of the Parties are allowed to be involved in all aspects of the case and allowed to review all pleadings and expert reports in this case.  The DESIGNATED INFORMATION will not be misused because only one designated representative per Party would be allowed to review the DESIGNATED INFORMATION and that person would be bound by this Order.  The designated representative of a Party is not allowed to review the other Party's DESIGNATED INFORMATION wholesale.  Rather, he/she is only allowed to review the DESIGNATED INFORMATION included in pleadings and expert reports.  Also, for its part, InvenSense's designated representative will not be involved in design and development of InvenSense's products.

Defendant's Statement:

STM disagrees with InvenSense's proposal to permit a designated representative from each side to view any and all expert reports and pleadings regardless of their content.  Under this

provision, a non-lawyer business person at InvenSense would have access to STM's highly sensitive RESTRICTED – ATTORNEYS' EYES ONLY materials, and even its RESTRICTED CONFIDENTIAL SOURCE CODE.

InvenSense's proposal is contrary to the Court's model protective order, which does not permit any designated representatives to view RESTRICTED – ATTORNEYS' EYES ONLY materials; only in-house counsel who (i) either have responsibility for making decisions dealing directly with the litigation of this Action, or are assisting outside counsel in the litigation of this Action; *and* (ii) hold no competitive decision-making authority can view those materials.  In-house counsel who meet these qualifications, however, play a fundamentally different role than non-lawyer business persons, who may be involved in IP licensing, business planning, product pricing, technology and product development, patent prosecution, or any number of other types of competitive decision-making.  *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  And even in-house counsel are never permitted to view RESTRICTED CONFIDENTIAL SOURCE CODE material under the Court's model order.

Significantly, STM and InvenSense are direct competitors in microelectromechanical systems (MEMS)—the accused technology in this case.  To safeguard STM's trade secrets and reduce the risk of disclosure of its highly confidential, proprietary information, it is critical that InvenSense business persons not be allowed access to information that STM designates with the two higher levels of confidentiality.  (As InvenSense has no in-house counsel, its designee under this provision would necessarily be a non-lawyer business person.)  Materials given these levels of confidentiality will include STM's crown jewels, such as its source code, engineering specifications, and design schematics for its MEMS products, as well as competitively sensitive pricing, sales, and business planning information.  The misuse of these materials and others—whether inadvertent, accidental, or intentional—could severely harm STM and even compromise

its competitive standing in the industry.

Facilitating settlement is no reason to permit an InvenSense employee access to the most sensitive documents of its direct competitor.  Parties routinely settle cases when the employees (including litigation decision-makers) of each side have no access to these materials.  In any event, under agreed-upon paragraph 5, three InvenSense employees will have access to STM materials designated as CONFIDENTIAL.

For all these reasons, InvenSense's proposed paragraph 32 should be struck from the protective order.  Should the Court decide to adopt InvenSense's proposal, STM would ask that at a minimum the designated representative for each side be limited to someone who has no involvement in competitive decision-making (as defined by *U.S. Steel*) and exercises no competitive decision-making authority on behalf of the Party.

.

Dated:  September 27, 2013                    Respectfully submitted,


                                      By:     _/s/_____
                                              Vinay V. Joshi
                                              Andrew T. Oliver
                                              Joshua Van Hoven
                                              Daniel Bedell
                                              TUROCY & WATSON LLP
                                              560 S. Winchester Blvd.
                                              Suite 500
                                              San Jose, CA  95128
                                              Tel:  650-618-6481
                                              Email:
                                                vjoshi@turocywatson.com
                                                aoliver@turocywatson.com
                                                jvanhoven@turocywatson.com
                                                dbedell@turocywatson.com

                                              Eric H. Findlay (Texas Bar No. 00789886)
                                              FINDLAY & CRAFT LLP
                                              6760 Old Jacksonville Hwy, Suite 101
                                              Tyler, TX 75703
                                              Email:  efindlay@findlaycraft.com
                                              Tel:     (903)534-1100
                                              Fax:     (903)534-1137

                                              ATTORNEYS FOR PLAINTIFF
                                              INVENSENSE, INC.

By:   */s/ Mark J. Mann*
_____
Mark J. Mann
Mann Tindel & Thompson Law Group
300 West Main Street
Henderson, Texas 75652
Tel: (903) 657-8540
Fax: (903) 657-6003
Email: Mark@TheMannFirm.com

Charles K. Verhoeven
Sean S. Pak
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel.: (415) 875-6600
Fax: (415) 875-6700
E-mail: SeanPak@quinnemanuel.com

Michael D. Powell
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel.: (650) 801-5000
Fax: (650) 801-5100
E-mail: mikepowell@quinnemanuel.com

*Counsel for Defendant STMicroelectronics, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2013, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

_____/s/_____
Andrew T. Oliver