## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| INVENSENSE, INC., <br><br>         Plaintiff, <br><br>    v. <br><br> STMICROELECTRONICS, INC., <br> STMICROELECTRONICS N.V., AND <br> DOES 1 through 9, inclusive, <br><br>       Defendants. | Civil Action No. 2:13-cv-405-JRG <br><br> **JURY TRIAL DEMANDED** |

**STMICROELECTRONICS N.V.'S REPLY IN SUPPORT OF MOTION TO DISMISS INVENSENSE'S SECOND AMENDED COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS, LACK OF PERSONAL JURISDICTION, AND IMPROPER VENUE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3), AND 12(b)(5)**

## I.      INTRODUCTION

The Court should dismiss STMicroelectronics N.V. ("STNV") from this litigation because it has no connection whatsoever to the infringement allegations at issue, and the naming of STNV as a defendant can be viewed only as an exercise in harassment and litigation abuse. InvenSense has not offered this Court any credible evidence to support its allegations against STNV, and the evidence presented by STNV in support of its Motion to Dismiss conclusively demonstrates that InvenSense's allegations against STNV are unfounded.

STNV is a Dutch holding company.  Its purpose is to hold stock in other STMicroelectronics entities; it is not an operating company engaged in building, buying, or selling products or services.  No amount of discovery will change the fact that STNV has absolutely no connection to this litigation. But InvenSense refuses to acknowledge that STNV is not a proper defendant.  Instead, InvenSense made two failed attempts to serve STNV and refused to acknowledge, prior to the Court-ordered deadline for STNV to respond to the Second Amended Complaint ("SAC"), that these attempts were ineffective. Indeed, InvenSense threatened to move for default judgment if STNV did not respond to its SAC.  Had InvenSense acknowledged that its initial attempts at service were ineffective under controlling Fifth Circuit law, *as it now concedes*, STNV would not have been forced to file the present Motion and would have reserved its jurisdiction and venue arguments in the event that service is lawfully effected. Because service has not been lawfully effected, STNV asks that the Court quash InvenSense's two failed service attempts and dismiss STNV from this case.

STNV should be dismissed from this litigation for lack of personal jurisdiction even if the Court finds that InvenSense has effected service on STNV.  InvenSense's argument that personal jurisdiction exists relies on its erroneous belief that STNV controls the ST.com global website. But STNV does not own, control, or operate the ST.com website, and the website's availability to U.S. residents is thus *not* imputable to STNV.  And in any event, control over the ST.com website would be insufficient to establish personal jurisdiction, as the website is predominately passive and no evidence exists that the *de minimis* sales activity through the website has ever

involved a Texas resident or even an accused product in this litigation.  Personal jurisdiction over STNV cannot be established on account of a website that STNV does not own or based on sales that STNV does not make, particularly where no Texas customers have been alleged, let alone identified.  Further, because InvenSense has not shown valid service or personal jurisdiction over STNV, venue is not proper in this district, whether under 28 U.S.C. § 1400(b), § 1391(c)(3), or both.  Simply put, there is no  basis for STNV's presence in the lawsuit.  STNV's Motion to Dismiss should therefore be granted.

## II.     THE COURT SHOULD DISMISS STNV FOR INSUFFICIENT SERVICE

### A.     InvenSense Has Failed—Twice—to Serve STNV

To keep STNV in this case, InvenSense must show valid service of process.  *Aetna Bus. Credit Inc. v. Univer. Décor and Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981).   But InvenSense admits that despite two attempts at service, STNV has not been served.  First, InvenSense improperly attempted to serve an agent of STNV in New York.  But that agent, Corporation Service Company ("CSC"), is not a general agent for STNV, and it rightly refused to accept service.   In that regard, InvenSense has been noticeably silent concerning the statements in STNV's annual disclosure identifying CSC as a limited agent only.  (Opp. at 8 n.4.) Second, InvenSense attempted to serve STNV in The Netherlands by mail, which it now concedes is not permitted under Fifth Circuit law.  (*Id.* at 8 n.5.)  InvenSense's admission that service by mail is improper is a complete reversal of its position prior to the filing of this Motion, when InvenSense insisted that STNV had been properly served and even threatened to move for default judgment.  (Decl. of A. Bramhall ISO STNV's Motion to Dismiss, Exhs. D at 1; F at 2.) InvenSense's apparent goal was to force STNV to respond to its Complaint despite the fact that STNV has not been served and is not a proper defendant in this litigation.

### B.     InvenSense Now Claims a Third Attempt at Service Is "In Process"

Now conceding that STNV has not been properly served, InvenSense asks the Court to ignore its two earlier, improper service attempts because yet another attempt at proper service is "in process."  (Opp. at 6.)  This time, InvenSense claims it intends to utilize the formal channels

of the Hague Convention—*i.e.*, the Central Authority of the Netherlands.  (*Id.* at 6-7.)  But InvenSense does not represent to this Court that it has completed this manner of service on STNV; it merely offers the fact that preliminary steps have been taken to request service and that the Central Authority of The Netherlands has acknowledged its receipt of InvenSense's request.  (Opp. at 7.)  Importantly, the Central Authority has not even indicated it will grant InvenSense's request for service, and it is unclear when, if ever, service will be complete.[1]

### C.  STNV's Motion to Dismiss for Insufficient Service of Process Is Timely

Tellingly, InvenSense's arguments in response to STNV's Motion to Dismiss for Insufficient Service focus on the Motion's timing, rather than its substance.  But lack of effective service is a statutory basis for a motion to dismiss, and nothing about the timing of STNV's Motion renders it "meritless" as InvenSense now contends.  *See* FED. R. CIV. P. 12(b); 12(h)(1).[2] Further, the timing of STNV's Motion was dictated by InvenSense's explicit threat to move for default if STNV did not respond to its complaint prior to service being effected.  Accordingly, STNV responded with the present Motion to Dismiss on the date indicated in the docket— October 17, 2013.

## III.  STNV IS NOT SUBJECT TO SPECIFIC PERSONAL JURISDICTION

InvenSense concedes that STNV is not subject to general jurisdiction and instead relies solely on specific jurisdiction.  (Opp. at 11 n.7.)  But, as STNV already explained, ***STNV is a***

---

[1]  InvenSense now—for the first time—indicates a willingness to forego its prior service attempts altogether and let service rest on its in-progress attempt to serve STNV via the Central Authority in the Netherlands.  (Opp. at 8.)  STNV responded to the Complaint with the instant motion ***despite*** not being properly served based on InvenSense's explicit threat that it would move for default judgment against STNV.  Had InvenSense instead taken a reasonable position on this issue in the first instance, the present motion would not have been necessitated unless and until such time that service is effected.  Moreover, upon receipt of the Opposition reflecting InvenSense's current position, STNV offered to withdraw the present motion without prejudice until such time as service was effectuated – so as to prevent an unnecessary and premature burden on the parties and the Court.  InvenSense did not accept that offer.

[2]  Should the Court believe that dismissal is premature at this juncture, STNV respectfully requests that the Court exercise its broad discretion to construe the motion to dismiss as a motion to quash.  *Isais v. Marmion Indus. Corp.*, No. CIV.A. H-09-3197, 2010 WL 723773, at *4 (S.D. Tex. 2010).

***foreign holding company that does not conduct any ongoing business in Texas; has no offices, facilities, or operations here; and does not make, offer to sell, sell, import, or ship any accused products here.*** (Mot. at 12-17.)   Accordingly, InvenSense cannot make the required *prima facie* showing of specific jurisdiction.  *Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir. 1993).

### A.    STNV Does Not Host, Maintain, or Operate the ST.com Website

According to InvenSense's Opposition, the sole question for this Court regarding personal jurisdiction is whether the global ST.com website permits an exercise of specific personal jurisdiction over STNV.  The answer to that question is an emphatic "no."

In support of its argument for specific personal jurisdiction, InvenSense erroneously argues that STNV "controls" the ST.com website.  (Opp. at 11.)   But InvenSense mistakenly assumes that STNV is the "corporate parent" referred to in a statement from STMicroelectronics, Inc.'s  ("STM") Motion: "the website is exclusively owned and maintained by STM's corporate parent . . . ."  (*Id.* at 12.)  As InvenSense well knows, STM is ***indirectly*** owned by STNV, which itself is the top-most holding company in the STMicroelectronics group of companies.  (*Id.* at 13.)  STNV is STM's indirect parent and is ***not*** the corporate entity that owns and maintains the ST.com website.  (STM Corporate Disclosure Statement (Dkt. No. 76), at 1; Declaration of Philippe Dereeper in Support of STNV's Motion to Dismiss ("Dereeper Decl.") at ¶ 8.)  Nothing in STM's Motion to Dismiss or anywhere else in the record contradicts the fact that STNV does not host or maintain the ST.com website.  (Opp. at 16; Dereeper Decl. at ¶ 8.)  Moreover, STNV also does not create any marketing literature on the ST.com website—including the datasheets and other technical materials that InvenSense points to for inducement theories of infringement.  (Dereeper Decl. at ¶¶ 7-8.)   InvenSense has adduced no evidence that STNV has any involvement with running ST.com—much less that it operates the website—and, accordingly, InvenSense's argument for specific personal jurisdiction fails.[3]

---

[3]    The standard reservation of rights on the last page of each STM datasheet does not prove that STNV "provided" those documents, as InvenSense contends, or that STNV had any role in creating them.  (Opp. at 19-20; *see also* Declaration of Vinay V. Joshi in Opposition to STNV's Motion to Dismiss, Exhs. 20-25.)

Contrary to InvenSense's arguments, this Court need not take its allegations about the ST.com website as true.  (Opp. at 19.)  Both in the Motion and supporting declarations, STNV has challenged these allegations.  In his Declaration, Mr. Dereeper states that "STNV does not sell *any products* on the ST.com website, including evaluation or development boards." (Dereeper Decl. at ¶ 8 (emphasis added).)  He further states that "STNV does not host or maintain the website at www.ST.com."  (*Id*.)  These statements could not be more unequivocal.

While InvenSense asks this Court to construe the word "maintain" in an artificially narrow manner to support its conclusory allegation that STNV is responsible for ST.com, this interpretation should be rejected.  STNV has clearly controverted InvenSense's allegations as to the ST.com website by sworn declaration, and none of InvenSense's allegations concerning the website should be taken as true.  *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *Applied Food Sciences, Inc. v. New Star 21*, No. W–07–CA–359, 2009 WL 9120113, at *2 (W.D. Tex. 2009) ("[T]the requirement of a *prima facie* case does not require the Court to credit conclusory allegations, even if uncontroverted.") (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

### B.     The ST.com Website Does Not Support a Finding of Specific Jurisdiction

Even if STNV controlled or operated the ST.com website—it does not—an exercise of specific personal jurisdiction based on the ST.com website would still be improper.  Control or operation of the ST.com website cannot reasonably be characterized as an activity purposefully directed to Texas residents or as purposeful availment of the benefits and privileges of this state.

### 1.     The ST.com Website Is Not Purposefully Directed at Texas Residents

The ST.com website is global in coverage.  Users can switch between three different languages—English, Chinese, and Japanese.  It identifies sales offices and distributors throughout the world.  The content is the same for anyone accessing the site, regardless of location.  The ST.com website therefore does not purposefully target residents of Texas anymore that it does those of any other state or country.  *See Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125, 1131 (S.D. Iowa 2004) ("While GDT's Web site is both commercial and highly interactive, the

site is arguably no more directed at Iowa than at Uzbekistan. . . . As GDT's Web site could be accessed anywhere, including Iowa, its existence does not demonstrate an intent to purposefully target Iowa.") (internal citations omitted).   InvenSense's arguments, if accepted, would essentially subject STNV to **worldwide** personal jurisdiction, a result that would violate due process. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) ("As *Zippo* and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.").

### 2.      The ST.com Website Is Passive and Provides Limited Interactivity

Case law uniformly holds that mostly passive websites—such as ST.com—do not subject their owners to jurisdiction. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005).   The vast majority of the content on ST.com is focused on providing technical information, making available marketing information, and providing contact information.  (*See, e.g.*, Supp. Decl. of A. Bramhall in Support of STNV's Motion to Dismiss, Exhs. I (ST.com homepage); J (webpage for "MEMS and Sensors.").)  These types of passive, informational activities cannot serve as the basis for specific jurisdiction. *See, e.g.*, *McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009) (identifying local sales representative and providing contact information on website found insufficient); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (making available information about company's products and services, providing users with printable mail-order forms, and displaying the company's contact information found insufficient).

What limited commercial interactivity occurs through ST.com also falls far short of the level necessary to find personal jurisdiction based solely on website contacts. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) ("[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.") (internal quotations omitted).   The only "products" that can be directly purchased from the ST.com website are evaluation and development boards.  Yet those are generally small quantity, isolated sales intended for testing,

not for resale or inclusion in downstream products.[4]  These types of sales are *de minimis* and do not support a finding of specific jurisdiction.  *See, e.g*, *Manley v. Air Can.*, 753 F. Supp. 2d 551, 557 n.2 (E.D.N.C. 2010) ("This is not to say that a court could not exercise personal jurisdiction based on internet sales, but rather that something more than the *de minimis* sales presented here would be necessary to satisfy the rigors of constitutional due process."); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 228 (5th Cir. 2012) (holding *de minimis* internet sales from defendant's website insufficient for specific personal jurisdiction); *Shamsuddin v. Vitamin Res. Products*, 346 F. Supp. 2d 804, 817 (D. Md. 2004) (holding same).

### 3.  InvenSense Has Failed to Allege Even a Single Sale of an Accused Product to Texas Residents Through ST.com

InvenSense has presented *no evidence whatsoever* of any eStore sales to Texas residents. InvenSense has not identified—or *even alleged*—the existence of a single eStore customer in Texas, or of any sale or shipment to Texas of an accused product purchased through the eStore to Texas.  (*See* SAC at ¶ 49; Opp. at 18-19.)  In the absence of actual or alleged sales to Texas, InvenSense cannot meet its burden of showing that STNV, or, more appropriately, the operator of the ST.com website, purposefully availed itself of the benefits of doing business in Texas through ST.com.  *See, e.g.*, *Applied Food Sci., Inc. v. New Star 21, Inc.*, No. CIV.A. W-07-CA-359, 2009 WL 9120113, at *4 (W.D. Tex. 2009) (finding no specific jurisdiction where plaintiffs had "not pointed to any sales originating from the websites to persons or entities located in Texas"); *Amini Innov. Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1104 (C.D. Cal. 2007) (finding no purposeful availment where plaintiff did not show evidence of sales through its website to California residents).[5]

### C.  Third-Party Activities in Texas Cannot Be Attributed to STNV

By focusing its arguments on the downstream acts of third parties—*i.e.*, distributors and sales offices—and not of STNV itself, InvenSense misapplies the "stream of commerce" theory

---

[4]   The ST.com eStore offers for sale only evaluation and development boards.
[5]   Even assuming *arguendo* that InvenSense had shown sales to Texas residents, isolated sales in a forum state are not enough.  *See Pervasive Software*, 688 F.3d at 228.

of personal jurisdiction.  (Opp. at 20-21.)  That test "focuses on **defendant's** actions with the forum state and not a third party's independent actions."  *Garnet Digital LLC v. Apple Inc.*, 893 F. Supp. 2d 814, 816 (E.D. Tex. 2012) (emphasis added).  None of the cases InvenSense cites supports the notion that a company can be subject to jurisdiction based exclusively on third party independent actions.  (Opp. at 17-18.)  Moreover, any allegations in which InvenSense merely lumps STNV together with third parties, including its subsidiaries, should be ignored.  *See Burlington N. & Santa Fe R.R. Co.*, 4:10-CV-618-Y, 2010 WL 4877279, at *4 (N.D. Tex. 2010).

### D.      InvenSense Failed to Address the Cases Cited by STNV and Relies on Cases that Do Not Support Finding Specific Jurisdiction Here

In its Opposition, InvenSense fails to address the cases cited by STNV, and the few cases on which InvenSense relies demonstrate that much more is required for jurisdiction than exists here.  In *Autobytel, Inc. v. Insweb Corp.*, for example, the court held that a website alone is not enough for specific personal jurisdiction—there must be something more, "such as advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents in the forum state."  No. 2:07-CV-524, 2009 WL 901482, at *2 (E.D. Tex. 2009).  STNV, however, performs **none** of those activities and does not otherwise conduct business in Texas.

Unlike STNV, the foreign defendant in *Symantec Corp. v. Acronis, Inc.* never disputed that it "maintain[ed]" a website which facilitated sales in the forum state or that its employees provided technical services to residents there.  No. C 12-05331 SI, ECF No. 76, at *3-5 (N.D. Cal. 2013).  And in *Stomp Inc. v. NeatO*, the court found specific jurisdiction because NeatO placed its **own** products into the stream of commerce and sold those products through its website "directly to Internet users" in the forum state.  61 F. Supp. 2d 1074, 1078 n.8 (C.D. Cal. 1999).  In *Vishay Dale Elecs., Inc. v. Cyntec Co.*, the court found jurisdiction based on direct sales by a domestic defendant to a distributor that sold to customers in the forum state.  No. 8:07-CV-191, 2008 WL 281686, at *4 (D. Neb. 2008).  In contrast with the defendants in those cases, STNV has no connection to the allegedly infringing sales other than as a holding company.

**E.      It Is Not STNV's Burden to Show the Exercise of Personal Jurisdiction
Would Be Unreasonable**

InvenSense misapprehends the law regarding the third prong of the test for specific

jurisdiction.  (Opp. at 22-23.)   STNV need not show that the exercise of specific personal

jurisdiction would be unreasonable and unfair for its Motion to be granted: the determination of

whether there is specific personal jurisdiction over a defendant hinges on this inquiry *if and only*

*if* the plaintiff has made the first two required showings, which InvenSense has failed to do here.

*See Pervasive Software,* 688 F.3d at 227.  Nevertheless, as shown in its opening brief, exercising

personal jurisdiction over STNV would be unreasonable and unfair.  (Mot. at 17-18.)

## IV.     VENUE IS NOT PROPER ABSENT PERSONAL JURISDICTION

Venue in patent cases is governed by 28 U.S.C. § 1400(b).  "Residency" under § 1400(b)

is in turn determined by reference to 28 U.S.C. § 1391.  In the case of a foreign defendant, §

1391(c)(3) provides that "a defendant not resident in the United States may be sued in any

judicial district . . . ."  And under 28 U.S.C. § 1391(b)(3), where the defendant is not a resident of

any district, the defendant may be sued in "any judicial district in which any defendant is subject

to the court's personal jurisdiction with respect to such action."  *See Belden Techs., Inc. v. LS*

*Corp.*, 626 F.Supp.2d 448, 460 (D. Del. 2009) (holding that a "preliminary finding of personal

jurisdiction" is required for invoking § 1391(d) [the precursor to § 1391(c)(3)] and listing other

cases holding the same); *Mizrahi v. Great-West Life Assur. Co.*, No. CIV. A. 99–819, 1999 WL

398714, at *2 (E.D. Pa. 1999) ("An alien corporation may be sued in any district in which it can

be subject to personal jurisdiction.").   Consequently, STNV's objections to venue in this district

are entirely proper, and InvenSense's argument that STNV objected under the wrong statute is a

red herring because STNV argued in its opening brief that it lacks the minimum contacts

required to establish either general or specific personal jurisdiction.  (Mot. at 11, 19.)[6]  Whether

---

[6]   *Brunette Mach. Works, Ltd. v. Kockum Indus. Inc.*, 406 U.S. 706 (1972), applies only
to defendants that have been served.  *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 30
(D.D.C. 2000) ("*Brunette* addresses the choice of venue where valid service already has been
made.  *Brunette* is thus inapplicable here.").  As STNV has not been served, *Brunette* does not
apply.

InvenSense relies on § 1400(b), § 1391(c)(3), or both, the result is the same: venue is improper in this district because the Court does not have personal jurisdiction over STNV.

## V.     JURISDICTIONAL DISCOVERY SHOULD BE DENIED

In the alternative, InvenSense asks that the Court stay its decision on STNV's Motion for 60 days to allow InvenSense to conduct broad-ranging jurisdictional discovery.  (Opp. at 26-28.) The Court should reject this request for three reasons.  First, STNV has not been validly served with process and therefore, as a non-party, should not be subject to *any* discovery absent service of a subpoena, whether directed to jurisdictional issues or otherwise.  *Flock v. Scripto-Tokai Corp.*, No. CIV. A. H-00-3794, 2001 WL 34111630, at *6 (S.D. Tex. 2001).   Second, InvenSense has failed to make the necessary "preliminary showing of jurisdiction" required for granting jurisdictional discovery.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).  And third, InvenSense has not shown that *any* of the allegations it hopes to add after jurisdictional discovery—most of which are duplicative of existing allegations STNV has already proven to be false—would be material to the disposition of this Motion.  *Fielding*, 415 F.3d at 429 (noting that jurisdictional discovery should be sustained "if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts") (internal quotations omitted).  Merely listing information it hopes to find, as InvenSense has done, without showing why it believes those facts will be discovered or how they will change the analysis, is not enough to justify discovery on a party who has not even been properly served.  *Papa Berg, Inc. v. World Wrestling Entm't, Inc.*, No. 3:12-CV-2406-B, 2013 WL 2090547, at *9 (N.D. Tex. 2013) (denying discovery where plaintiff's "arguments in support of jurisdictional discovery do not show that such discovery would add any significant facts to his jurisdictional claims"). "Jurisdictional 'fishing expeditions'" are not permitted.  *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, ECF No. 1004, at *7 (E.D. Tex. 2013).

Dated:  November 15, 2013                          Respectfully submitted,


                                                  /s/ Michael D. Powell
                                                  Mark J. Mann
                                                  Mann Tindel & Thompson Law Group
                                                  300 West Main Street
                                                  Henderson, Texas 75652
                                                  Tel: (903) 657-8540
                                                  Fax: (903) 657-6003
                                                  Email: Mark@TheMannFirm.com


                                                  Charles K. Verhoeven
                                                  Sean S. Pak
                                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                  50 California Street, 22nd Floor
                                                  San Francisco, CA 94111
                                                  Tel.: (415) 875-6600
                                                  Fax: (415) 875-6700
                                                  E-mail: SeanPak@quinnemanuel.com


                                                  Michael D. Powell
                                                  QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                                  555 Twin Dolphin Drive, 5th Floor
                                                  Redwood Shores, CA 94065
                                                  Tel.: (650) 801-5000
                                                  Fax: (650) 801-5100
                                                  E-mail: mikepowell@quinnemanuel.com


                                                  *Counsel for Defendants*


## CERTIFICATE OF SERVICE


        I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 15th day of November, 2013.

                                                  /s/ Michael D. Powell
                                                  **Michael D. Powell**