IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INVENSENSE, INC., | § |
| | § |
| *Plaintiff*, | § |
| | § |
| *v.* | §    CASE NO. 2:13-CV-00405-JRG |
| | § |
| STMICROELECTRONICS, INC., *et al.*, | § |
| | § |
| *Defendants*. | § |

**MEMORANDUM OPINION AND ORDER**

    Before the Court is Defendant STMicroelectronics, Inc.'s ("STI") Motion To Dismiss for Improper Venue, or in the Alternative, To Transfer (Dkt. No. 19), filed July 17, 2013. Defendants argue, first, that venue is improper in the Eastern District of Texas and the case should be dismissed under Federal Rule of Procedure 12(b)(3); and, in the alternative, they argue that the Court should transfer this case to the Northern District of California for the convenience of the parties and witnesses under 28 U.S.C. § 1404(a). For the reasons set forth below, Defendant's Motion is **DENIED IN PART AND GRANTED IN PART**.

**I.    FACTUAL BACKGROUND**

    Plaintiff Invensense, Inc. ("Invensense") is a Delaware corporation with its principal place of business in Sunnyvale, California, part of the Northern District of California (Dkt. No. 11, at 2). Invensense develops and sells microelectromechanical systems (MEMS) devices, such as accelerometers and gyroscopes, for use in consumer products such as smart phones and tablets. *Id.* at 1. STI is a Delaware corporation with its principal place of business in Coppell, TX, in the Northern District of Texas (Dkt. No. 19-1, at 2). STI markets and sells MEMS

1

devices, including the products accused in this suit. In addition to its facilities in Coppell, STI has a regional office in the Northern District of California. *Id.* at 2.

The largest U.S. customer for STI's accused products is Apple, Inc. ("Apple") (Dkt. No. 19-2, at 2). Apple includes STI MEMS devices in consumer products sold throughout the United States, including the Eastern District of Texas (Dkt. No. 28-2). STI does not merely sell preexisting components to Apple at arms' length; rather, STI "works throughout the United States with numerous leading U.S. technology companies . . . to design, adapt, support, and update ST[I]'s MEMS devices for these customers' applications" (Dkt. No. 55-1, at 2). This work required "significant support and collaboration between ST[I]]'s and Apple's technical and non-technical personnel" and STI personnel "worked closely with Apple's engineers to assist Apple in utilizing ST[I] MEMS devices." *Id.* Without such collaboration, "the decision by Apple to utilize ST[I] MEMS may not have occurred." *Id.*

Invensense filed this lawsuit for patent infringement in the Eastern District of Texas on May 14, 2013 (Dkt. No. 1). However, the suit appears to be part of a broader patent dispute between these parties that began with a May 2012 suit (the "original patent suit") filed by STI against Invensense in the Northern District of California, alleging infringement of nine of STI's patents (Dkt. No. 20-1). In that case, Invensense counterclaimed, asserting infringement by STI of two of Invensense's patents (Dkt. No. 20-2). Those counterclaims asserted patents relating to the design and manufacture of microelectromechanical systems, and accused specific components and versions of STI's L3G4200D and LSM330 devices. *Id.*

Incident to the original patent suit, Invensense petitioned the United States Patent and Trademark Office to reexamine seven of STI's asserted patents (Dkt. No. 20-5). Invensense then petitioned the Northern District of California for a partial stay of STI's suit pending the results of

the reexamination. *Id.* That request was denied because "a *partial* stay of this matter would not simplify or streamline the trial or reduce the burdens of litigation on the parties or the Court" (Dkt. No. 20-6) (emphasis added). Invensense then amended its motion, seeking to stay the *entire* case, *including* its counterclaims, "to alleviate any claimed prejudice from a one-sided stay of only ST[I]'s patents" (Dkt. No. 20-7). In response, the Northern District of California granted the stay, based on the explicit finding that the stay would not allow STI to gain an unwarranted tactical advantage (Dkt. No. 20-8).

STI then filed a Complaint with the International Trade Commission (ITC) seeking an investigation into Invensense's customers' alleged infringement of five patents, three of which it had asserted in the original patent suit (Dkt. No. 20-9). STI followed this with new infringement suits filed in the Northern District of California alleging infringement of the other two patents at issue in the ITC investigation (Dkt. No. 20, at 4). The ITC rejected Invensense's request to stay the ITC investigation on the basis of distinct remedies available in that forum (Dkt. No. 20-12).

Invensense, for its part, filed this suit against STI for infringement on two additional patents. The patents asserted in this suit share common inventors and deal with similar substance as the patents at issue in Invensense's original counterclaims, and accuse some of the same products, including the L3G4200D and LSM330 devices mentioned above (Dkt. No. 38-1).

STI's Coppell, TX facility is less than a mile from the border that divides the Eastern and Northern Districts of Texas. Invensense alleges that the bulk of relevant documentary evidence is located in Coppell, and STI does not rebut this assertion, though it does aver that little if any relevant evidence exists within the Eastern District of Texas. This may be true but does not speak to the existence of evidence extremely close by. Each side has identified potential witnesses in or near their preferred venue, and each side questions the relevance of the other side's witnesses.

3

## II.      PROPRIETY OF VENUE

Defendants' first argument is that this case should be dismissed for improper venue under 28 U.S.C. § 1406.

### A.  Legal Standards

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action brought in an improper venue. If the Court finds that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

In patent infringement cases, venue is proper "in the judicial district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. 1400(b). Generally, corporate defendants are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. 1391(c)(2). Thus, with respect to corporate defendants (but not individuals), the "acts of infringement plus" test is effectively surplussage. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 f.2d 1574, 1580 n.17 (Fed. Cir. 1990).

In states such as Texas, where the forum's long-arm statute is coextensive with the limits of constitutional due process, personal jurisdiction exists where a defendant has "certain minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Such jurisdiction may be general or specific. General jurisdiction exists where the defendant has "'continuous and systematic contacts with the forum state,'" such that jurisdiction remains fair "'even when the cause of action has no relationship with those

contacts.'" *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1331-32 (Fed. Cir. 2008). Specific jurisdiction exists when the defendant has "'purposely directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Avocent*, 552 F.3d at 1330 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

The Federal Circuit has distilled the specific jurisdiction question into a three-part test, which asks "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). A defendant may purposely direct its activities toward a jurisdiction if it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

### B. Analysis

As explained below, the Court finds that STI is subject to personal jurisdiction within the Eastern District of Texas for the purposes of this case on a specific jurisdiction theory. Accordingly, it need not determine whether, as Invensense urges, STI's presence in close proximity to the Eastern District results in contacts sufficient to support general jurisdiction.

Invensense's strongest argument for specific jurisdiction rests on the "stream of commerce" theory outlined in *World-Wide Volkswagen*. Invensense argues that, by supplying the accused products to Apple for inclusion in nationally-distributed retail products, STI purposefully directed its activities at every jurisdiction in which Apple products are sold,

including the Eastern District; and that, insofar as those activities infringed on Invensense's patents, there is no injustice in bringing STI into court in any such jurisdiction. STI, to the contrary, argues that its transactions with Apple occurred outside the Eastern District, and that, despite an abstract knowledge that Apple would sell its products in the Eastern District, STI was indifferent to Apple's use of the accused products and thus did not "deliver its products into the stream of commerce" in a way that supports personal jurisdiction. Invensense cites cases that establish that a manufacturer of component parts may sometimes be subject to jurisdiction based on the sale by a third party of a device containing the component. *Nidec Corp. v. LG Innotek Co.*, No. 6:07-CV-108-LED-JDL, 2008 WL 7048882 (E.D. Tex. Dec. 11, 2008) (Love, J.); *Jacobs Chuck Mfg. Co. v. Shangdong Weida Mach. Co.*, No. 2:05-CV-185-TJW, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005) (Ward, J.); *see also Donnelly Corp. v. Reitter & Schefenacker GmbH & Co. KG*, 189 F. Supp. 2d 696 (W.D. Mich. 2002); *Motorola, Inc. v. PC-Tel, Inc.*, 58 f. Supp. 2d 349 (D. Del. 1999). STI, in contrast, cites a case in which a manufacturer transacting with intermediaries at arms' length escaped specific jurisdiction. *See Adell Corp. v. Elco Textron, Inc.*, 51 F. Supp. 2d 752 (N.D. Tex. 1999).

The debate between the parties mirrors a split in the Supreme Court's own jurisdictional case law. As has been explained elsewhere:

> In *Asahi* [*Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)] the plaintiff asserted the jurisdiction of California state court was proper for the purpose of requiring a Japanese corporation to indemnify a Taiwanese corporation on the basis of a sale made in Taiwan and a shipment of goods from Japan to Taiwan. All of the justices agreed that jurisdiction did not lie in California and that the stream of commerce theory provided a valid basis for determining minimum contacts. The justices, however, could not agree as to the exact requirements of an application of the theory. Four justices, led by Justice O'Conn[o]r, expressed that an exercise of personal jurisdiction required more than the mere act of placing a product in the stream of commerce, but there must be in addition "an action of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112.

The O'Conn[o]r plurality's view has become known as the "stream of commerce plus" theory. Four other justices, led by Justice Brennan, did not believe that the showing of additional conduct was necessary. The Brennan plurality held that:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity.
>
> *Id.* at 117.

*Jacobs Chuck*, 2005 WL 3299718 at *3.

The distinction between these two theories of personal jurisdiction parallels the distinction between "knowledge" and "purpose" in criminal law. *Cf.* MODEL PENAL CODE § 2.02. And the "stream of commerce" theory of jurisdiction presents questions of law mirroring the tension between these two standards in questions of criminal complicity. *Compare United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (Hand, J.) (holding that complicity in a crime requires that the defendant "in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed") *with Backun v. United States*, 112 F.2d 635, 637 (4th Cir. 1940) ("The seller may not ignore the purpose for which the purchase is made if he is advised of that purpose, or wash his hands of the aid that he has given the perpetrator of a felony by the plea that he has merely made a sale of merchandise . . . . In any such case, not only does the act of the seller assist in the commission of the felony, but his will assents to its commission, since he could refuse to give the assistance by refusing to make the sale.").

*World-Wide Volkswagen* clearly requires a "purposeful" direction of commerce at the forum state. 444 U.S. at 297. Justice O'Connor thus concludes that, whatever is required of stream of commerce theory, mere knowledge must not be sufficient—there must be some further indication of purposefulness. For Justice Brennan, on the other hand, an action undertaken with knowledge of its probable consequences evinces a purpose that those consequences be brought about. By placing goods in the stream of commerce in such a way that they foreseeably reach a jurisdiction, the defendant willingly accepts the risk of being brought into court there, in exchange for the potential benefits of commerce. Mere knowledge, then, is sufficient to *demonstrate* purpose.

Despite their difference in approach, this Court concludes that the members of the *Asahi* Court effectively agree on the standard for personal jurisdiction. Both sides agree, it seems, that the stream of commerce theory demands some purposeful action directing goods toward the forum. A paradigmatic perfect-competition transaction, between arms-length parties whose fates are not intertwined, will not subject the seller to any jurisdiction in which the buyer resells a good. In contrast, the entire Court seems to agree that the "purpose" required for jurisdiction does not demand that the defendant wish to direct commerce into the jurisdiction as an end in itself. A party may desire to reach a market as an instrumental goal in its broader pursuit of monetary gain. Moreover, the Court seems to agree that a defendant need not direct commerce into any one jurisdiction *in particular*—that is, into one jurisdiction as opposed to another.

The only dispute, then, is whether knowledge that a product will likely reach a forum, *on its own*, is sufficient to sustain jurisdiction (on the theory that such knowledge, in a commercial context, is tantamount to purpose). *Cf. Backun*, 112 F.2d at 637. In the modern world, however, this dispute exclusively occurs in the abstract. In reality, we do not live in a world of perfect-

8

competition transactions where parties conduct business at arms' length. In the worldly marketplace, parties invest in long-term business relationships and tie their futures to one another to avoid the transaction costs stemming from constantly dealing at arms' length. Thus, a manufacturer will nearly always be invested in the success of its customers—it hopes that the customer will sell many products, so that the customer will order more components from the manufacturer. Manufacturers work hard to ensure the successful integration of their components into the customer's products, that they may retain the customer's business and share in their prosperity. And in doing so, they undertake the customer's purpose to ensure that the products into which the components are integrated be sold as widely as possible.

This is the case here. Apple did not dispassionately select STI's MEMS devices and put in an order, which STI filled indifferently. Rather, STI worked closely with Apple engineers to integrate STI components into Apple's products and ensure that they worked correctly. They did so both to secure Apple's business *and* to ensure a quality product that be popular and profitable, leading to substantial orders for STI. In doing so, STI obviously knew that the products it was helping to design would reach customers all over the world, including the Eastern District of Texas. In fact, the *purpose* of STI's making its engineers available to Apple was to ensure that its products would be included in a product that would be so widely distributed. Regardless of which *Asahi* test "correctly" interprets *World-Wide Volkswagen*, its requirements are met here.

Accordingly, the Court finds that the Eastern District of Texas has specific jurisdiction over this suit. STI thus resides in the Eastern District of Texas for venue purposes, and the Court finds that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400(b). Defendants' request that the Court dismiss this case for improper venue is **DENIED**.

9

### III.   TRANSFER

Having failed to establish that venue in the Eastern District of Texas is improper, Defendants urge the Court in the alternative to transfer the case to the Northern District of California under 28 U.S.C. § 1404(a).

#### A.  Legal Standards

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).

Once that threshold is met, the movant has the burden of proving that the transferee venue is "clearly more convenient" than the transferor venue.  *In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re TS Tech*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*).  In this regard, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.  *See Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319.  The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at

home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1319; *Volkswagen I*, 371 F.3d at 203.  Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive.  *Volkswagen II*, 545 F.3d at 314-15.

**B.  Analysis**

As an initial matter, Defendant argues, and Plaintiff does not contest, that this case could have been filed in the Northern District of California, satisfying the first prong of the *Volkswagen I* test (Dkt. No. 19, at 16). The question, then, is whether Defendant has carried its burden of proving that the Northern District of California is clearly the more convenient venue.

*1.  Private Interest Factors*

The first group of *Volkswagen I* factors assess the convenience of the venue to the parties and to potential third-party witnesses. With respect to the first factor, Defendants argue that "no relevant sources of proof are located in the Eastern District of Texas" and ask the Court to conclude from this assertion that this factor favors transfer to California. Plaintiffs respond by pointing out that such proof is nonetheless presumed to exist at STI's Coppell, TX headquarters, and that STI's affidavits fail to support a conclusion to the contrary. *Uniloc USA, Inc. v. Distinctive Development Ltd.*, No. 6:12-CV-462-LED, 2013 WL 4081076, at *2 (E.D. Tex. Aug. 5, 2013). The Court finds that this factor counsels against transfer.

As to the availability of compulsory process to secure the attendance of witnesses, STI argues that this factor favors transfer because several nonparty witnesses reside in the Northern District of California, which would have absolute subpoena power over those witnesses. Invensense contests the relevance of the identified witnesses and identifies a few witnesses itself

who are within the subpoena power of the Eastern District of Texas. On balance, the Court finds

that STI's identified witnesses ("third-party prior art witnesses, customer witnesses, [and]

prosecuting attorneys") are more likely to be relevant to this case than Invensense's identified

witnesses ("distributors of the accused devices") (Dkt. No. 19, at 25; Dkt. No. 28, at 20). The

Court does not significantly weight the availability of compulsory process for witnesses in the

parties' control, since the parties are presumed to be able to induce these witnesses to testify. *See*

*Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643-44 (E.D. Tex. 2011).[1]

     With respect to the factor concerning the convenience of willing witnesses, both parties

are in the unique position of insisting that their chosen venue, which is obviously less convenient

to their respective locations, is nonetheless more convenient for the other party. STI, a Texas-

based corporation, argues that the Northern District of California is more convenient for

Invensense's employees; and Invensense, a California-based corporation, argues that Texas is

more convenient for STI (Dkt. No. 19, at 19-20; Dkt. No. 28, at 25). The Court has integrated

concern for potential third parties' convenience, whether they are subject to compulsory process

or not, into its analysis of the second factor, above. *See Volkswagen II*, 545 F.3d at 316.

Accordingly the Court finds that this factor is neutral.

     It is the fourth *Volkswagen I* factor that is dispositive within the Court's analysis. This

case is part of an ongoing patent battle between Invensense and STI that began in the Northern

---

[1] The Court does note, however, that Defendants mis-state the law as to this Court's absolute subpoena power. This Court may refuse to quash any subpoena compelling attendance at a deposition within the Eastern District, provided it does not force the compelled witness to appear more than 100 miles from their residence or place of employment or business. Fed. R. Civ. P. 45(a)(2), (c)(1)(A). Thus, if Defendant's Coppell, TX employees were deposed in Plano, TX, the Court would have the power to enforce the subpoena. *See Ingeniador, LLC v. Adobe Systems Inc.*, No. 2:12-CV-805-JRG, Dkt. No. 59, at 3-5 (E.D. Tex. Jan. 9, 2013).

District of California. Two products implicated in this lawsuit, using the same kinds of technologies implicated in this lawsuit, were accused in counterclaims brought by Invensense against STI in California. As noted above, the Northern District of California stayed the first lawsuit by STI against Invensense with the explicit intention of holding both parties static, so that neither party could gain tactical advantage while the patent office reexamined STI's patents. And though both parties have arguably sought such an advantage, this Court thinks it wise to allow the Northern District of California to determine whether and how to reconcile the varying aspects of this case. The Court believes that the Northern District of California will be better suited, in light of the parties' broader litigation, to decide the issues of case-management and procedure that often take up the bulk of a trial court's time. Accordingly, the Court finds that this factor weighs clearly in favor of transfer.

### 2. Public Interest Factors

The Eastern District of Texas and the Northern District of California have two of the most active patent litigation dockets in the country. Motions to transfer cases from this Court to the Northern District of California are routine. Both of these courts have busy dockets that efficiently shepherd patent cases to trial or other disposition. Moreover, both courts are intimately familiar with patent law. Finally, patent cases are based on uniform federal law and present no conflict-of-law issues. The first, third, and fourth public interest factors are neutral.

As to local interests in having local issues decided at home, this Court has expressed doubts before over whether the presence of a major employer or industry in a district may create a legitimate local interest in adjudicating cases related to that industry. *See Ingeniador*, *supra*, at 6-7.  Such an argument suggests that the local interest is a pecuniary one, rather than one related to justice. At any rate, either no district has a localized interest in adjudicating this dispute, or

both do, since at least one party is located either in or trivially near both districts. The Court finds that this factor is neutral.

Weighing all of the above factors, the Court finds that Defendant STI has established that the Northern District of California is clearly a more convenient venue than the Eastern District of Texas. Accordingly, Defendant's request for a transfer is **GRANTED**. It is hereby **ORDERED** that this case shall be transferred to the United States District Court for the Northern District of California.

**So Ordered and Signed on this**

**Jan 10, 2014**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE